Nos. 20-55420, 20-55678

———————————————

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————————

INLAND EMPIRE WATERKEEPER, A PROJECT OF ORANGE
COUNTY COASTKEEPER; ORANGE COUNTY COASTKEEPER,

Plaintiffs – Appellants/Cross-Appellees,

v.

CORONA CLAY COMPANY,

Defendant – Appellee/Cross-Appellant.

———————————————

On Appeal from the United States District Court
for the Central District of California
Honorable David O. Carter, District Judge

———————————————

**BRIEF AMICUS CURIAE OF CHANTELL AND MICHAEL
SACKETT, DUARTE NURSERY, INC., JOHN DUARTE, and
ROGER J. LAPANT, JR., IN SUPPORT OF DEFENDANT-
APPELLEE/CROSS-APPELLANT CORONA CLAY CO.**

———————————————

ANTHONY L. FRANÇOIS
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: AFrancois@pacificlegal.org

*Attorney for Amici Curiae*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Amicus Curiae Duarte Nursery, Inc. states that it has no parent corporation, and that no publicly traded corporation holds 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...............................................i

TABLE OF AUTHORITIES....................................................................iii

IDENTITY AND INTERESTS OF AMICI CURIAE................................ 1

SUMMARY OF ARGUMENT ...................................................................3

ARGUMENT ........................................................................................ 4

    I.    This Court should hold that the Clean Water Act's civil penalty provisions, at 33 U.S.C. § 1319(d), are subject to the Eighth Amendment's Excessive Fines Clause. ........................................... 4

    II.   This Court should hold that the $3.7 million penalty imposed below violates the Excessive Fines Clause. .................................................. 13

CONCLUSION.....................................................................................15

STATEMENT OF RELATED CASES ....................................................16

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS................ 17

CERTIFICATE OF SERVICE ............................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Austin v. United States*, 509 U.S. 602 (1993)..........................................3-8

*Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989) .......................... 3-8, 10-11, 14

*Louis v. Commissioner of Internal Revenue*, 170 F.3d 1232 (9th Cir. 1999) ...........................................10

*Paroline v. United States*, 572 U.S. 434 (2014) ...................................................................7

*Sackett v. EPA*, 566 U.S. 120 (2012) ...................................................................2

*Timbs v. Indiana*, 139 S. Ct. 682 (2019) ............................................7, 10-11, 14

*Tull v. United States*, 481 U.S. 412 (1987) ...........................................................3, 12

*United States v. $100,348 in U.S. Currency*, 354 F.3d 1110 (9th Cir. 2004) .............................................11

*United States v. Bajakajian*, 524 U.S. 321 (1998) ........................................ 3, 8-11, 13-14

*United States v. Ferro*, 681 F.3d 1105 (9th Cir. 2012) ...............................................9

*United States v. Halper*, 490 U.S. 435 (1989) ...................................................................7

*United States v. Mackby*, 261 F.3d 821 (9th Cir. 2001) ...........................................10-11

## Constitutional Provision

U.S. Const. amend. VIII ...................................................................4

**Statute**

33 U.S.C. § 1319(d) ............................................................. 3, 12

**Rule**

Fed. R. App. P. 29(a)(2) ............................................................ 1

Chantell and Michael Sackett, Duarte Nursery, Inc., John Duarte, Roger J. LaPant, Jr. present this brief *amicus curiae*[1] with the consent of all parties under Fed. R. App. P. 29(a)(2), in support of Appellant Corona Clay Co. and in favor of reversal of the District Court's imposition of a $3.7 million civil penalty for paperwork violations of the Clean Water Act. Each of the amici are parties to Clean Water Act enforcement cases pending in this Court or in the Eastern District of California, or have been forced to settle Clean Water Act enforcement cases to avoid the imposition of catastrophic civil penalties. They each have an interest in the more robust application of the Excessive Fines Clause of the Eighth Amendment to the Constitution to the Clean Water Act's civil penalty authority.

## IDENTITY AND INTERESTS OF AMICI CURIAE

Chantell and Michael Sackett are the appellants in *Sackett v. EPA*, Ninth Circuit No. 19-35469. The Sacketts challenge an assertion of U.S. Environmental Protection Agency (EPA) regulatory authority, and

---

[1] This brief was not authored, in whole or in part, by any counsel for any party. No person or entity, other than Amici Curiae, their members, and their counsel, made a monetary contribution to the preparation and submission of this brief.

related administrative compliance order, which determine that their vacant lot in a mostly built-out subdivision in Priest Lake, Idaho, is a federally protected wetland under the Clean Water Act. *See generally Sackett v. EPA*, 566 U.S. 120, 122 (2012). For years, the Sacketts faced potential civil enforcement action, with attendant ruinous civil penalties if they lost, for the otherwise perfectly legal and innocuous action of clearing their own lot to build a home on it, for which use it is zoned and was fully permitted. Their appeal of the District of Idaho's affirmation of EPA control over their property under the Clean Water Act is fully briefed and set for oral argument in this Court on November 19, 2020.

Duarte Nursery, Inc., and its president, John Duarte, are the cross-defendants in *Duarte Nursery, Inc., v. Army Corps of Engineers*, E.D. California, No. 2:13-cv-02095-KJM-DB. Under the provisions of a consent decree, they were required to pay a $330,000 civil penalty to settle claims by the Army Corps of Engineers (Army) that the company violated the Clean Water Act when it allowed a tenant to plow 450 acres of farmland, another otherwise perfectly legal and innocuous activity. *Duarte Nursery, Inc.*, Dkt. no. 342 at 6:16-22 (consent decree provision for civil penalty). The Duarte parties found it necessary to settle the case after the Army

2

asked the Court to impose a $2.8 million civil penalty against the company and Mr. Duarte individually. *See Duarte Nursery, Inc.*, Dkt. no. 278-1 at 4:22-24 (proposed civil penalty included in proposed judgment in joint pre-trial statement).

Roger J. LaPant, Jr., is the defendant in *United States v. LaPant*, E.D. California, No. 2:16-cv-01498-KJM-DB. Mr. LaPant, like the Duarte parties in many respects, faces a civil enforcement suit by the Army for plowing his own land to grow wheat on it. Liability has not yet been adjudicated in Mr. LaPant's case. He faces potentially millions in civil penalties if found liable in the case.

## SUMMARY OF ARGUMENT

Clean Water Act civil penalties under 33 U.S.C. § 1319(d) (Subsection 1319(d)) are limited by the Eighth Amendment's Excessive Fines Clause. This is because under *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989), *Austin v. United States*, 509 U.S. 602 (1993), and *United States v. Bajakajian*, 524 U.S. 321 (1998), the Excessive Fines Clause applies to federal statutory civil penalties whose purposes at least include punishment for offenses. Under *Tull v. United States*, 481 U.S. 412 (1987), civil penalties under

Subsection 1319(d) are at least in part punitive, and hence are constitutionally limited by the Excessive Fines Clause.

Applying the Supreme Court's test of "gross disproportionality" established in *Bajakajian* for whether a fine is excessive, the $3.7 million penalty imposed below is unconstitutional because the offenses that it punishes are mainly reporting and "paperwork" (i.e., non-discharge) matters, which caused no harm to the environment, and because it is 370 times the actual cost avoided by the defendant resulting from the violation, and will bankrupt the defendant and deprive its 16 employees of their livelihood.

## ARGUMENT

### I. This Court should hold that the Clean Water Act's civil penalty provisions, at 33 U.S.C. § 1319(d), are subject to the Eighth Amendment's Excessive Fines Clause

"Excessive bail shall not be required, *nor excessive fines imposed*, nor cruel and unusual punishments inflected." U.S. Const. amend. VIII (emphasis added).

Despite the Founding Era vintage of the Excessive Fines Clause, the Supreme Court did not have occasion to begin interpreting it until its 1989 decision in *Browning-Ferris*, 492 U.S. at 262; *see also Austin*, 509

U.S. at 606 (*Browning-Ferris* first case interpreting Excessive Fines Clause). *Browning-Ferris* holds that the Excessive Fines Clause does not apply to punitive damages in cases not litigated by the government or where the damages are not payable to the government. 492 U.S. at 264, *id.* at 275-76.

In *Browning-Ferris*, the Supreme Court surveyed the history of the Excessive Fines Clause, including the identical provision in the English Bill of Rights of 1689, from which our Constitution's Clause is directly taken, *see* 492 U.S. at 266-68, all the way back to the Magna Carta's Amercements Clause in 1315, *see id.* at 268-70. A key element of this analysis, for purposes of this case, is that the Supreme Court identified the limits placed on amercements with the same purposes as the Excessive Fines Clause: to prevent the government from abusing its power to impose monetary sanctions. *Id.* at 270-71. One of Magna Carta's key limits for achieving this end was forbidding amercements that were "so large as to deprive [the defendant] of his livelihood[.]" *Id.* at 271.

*Austin v. United States*, 509 U.S. 602, is the Supreme Court's second case dealing with Excessive Fines Clause. *Id.* at 606. It holds that the Clause applies to in rem civil forfeiture proceedings. *Id.* at 622. *Austin*

states, based on *Browning-Ferris*, that "the Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government." *Id.* at 607 (quoting *Browning-Ferris*, 492 U.S. at 268). But footnote 3 in *Austin* observes that *Browning-Ferris* explicitly left open the question of whether the Excessive Fines Clause applies to *qui tam* actions, in which a private party litigates a case and the government shares in the recovery. *See Browning-Ferris*, 492 U.S. at 275 n.21; *Austin*, 509 U.S. at 607 n.3. *Austin* also notes that *Browning-Ferris* does not address whether the Clause only applies in criminal cases. *Austin*, 509 U.S. at 607.

In *Austin*, the Supreme Court again canvassed the text and history of the Excessive Fines Clause, relying in part on Justice O'Connor's treatment of these subjects in her separate opinion in *Browning-Ferris*, and concluded that the distinction between civil and criminal is not material to the applicability of the Clause. Rather, the question is whether a payment is a punishment. *Austin*, 509 U.S. at 610; *see generally*, *id.* at 607-10. A civil remedy can have both remedial and punitive purposes, but so long as it has some punitive purpose, it is punishment for the purpose of whether the Clause applies. *Id.* at 610

(Clause applies if sanction "can only be explained as serving in part to punish"); *see also United States v. Halper*, 490 U.S. 435, 448 (1989) ("a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment"). In short, if a civil sanction serves any retributive or deterrent purposes, it is a punishment and is subject to the Excessive Fines Clause.

The Supreme Court in *Austin* declined to offer any guidance on how to determine whether a penalty is excessive under the Clause, leaving that matter to the circuit courts to explicate in the first instance. *Austin*, 509 U.S. at 622-23.

The next and thus far most recent substantive development[2] in the Supreme Court's Excessive Fines Clause jurisprudence came in

---

[2] In *Paroline v. United States*, the Court used its prior Excessive Fines Clause precedents in a constitutional avoidance argument to give a narrow reading to a criminal restitution statute, because the restitution provisions under review were at least in part punitive. 572 U.S. 434, 455-56 (2014). And in *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019), the Court held that the Excessive Fines Clause is incorporated against the states under the Fourteenth Amendment's Due Process Clause. In its analysis of the history of the Clause, the Court noted, "[a]s relevant here, Magna Carta required that economic sanctions 'be proportioned to the wrong' and 'not be so large as to deprive [an offender] of his livelihood.'" *Timbs*, 139 S. Ct. at 688 (quoting *Browning-Ferris*, 492 U.S. at 271).

*Bajakajian*, 524 U.S. 321. In that case, the government was seeking forfeiture of over $357,000 in cash which the defendant had failed to declare to customs officials upon travelling outside the country. *Id.* at 324. Until this case, the Supreme Court had never actually applied the Clause. *Id.* at 327. *Bajakajian* clarifies the holding of *Browning-Ferris* as follows: that at the Founding, "the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense." *Id.* (quoting *Browning-Ferris*, 492 U.S. at 265). The Court in *Bajakajian* had "little trouble concluding" that the currency forfeiture at issue in the case was a punishment. *Id.* at 328. The Court rejected the government's argument that a deterrent purpose avoided application of the Clause, stating to the contrary that deterrence falls within the ambit of punishment and renders the forfeiture punitive. *Id.* at 329; *see also id.* at 329 n.4 (any punitive purpose of a forfeiture subjects it to the Excessive Fines Clause (citing *Austin*, 509 U.S. at 621-22)).

After again examining the history of the Clause, the Supreme Court adopted the following standard for applying the Clause to penalties and payments which are limited by it: "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportionate to the gravity of a defendant's conduct." *Bajakajian*, 524 U.S. at 334, *see id.* at 336-37. The Supreme Court also held that a district court's determination as to proportionality is reviewed de novo in the circuit court. *Id.* at 337, *see also id.* 336 n.10; *accord United States v. Ferro*, 681 F.3d 1105, 1110 (9th Cir. 2012).

Applying this standard, the Court concluded that forfeiture of the Bajakajian family's entire $357,000 was disproportionate to the crime of failure to report the currency, and therefore violated the Excessive Fines Clause. 524 U.S. at 337-41. Central to the Court's conclusion were that the offense of failure to report was relatively minor, was not related to any other crime, and deprived the government of no money and only of a small quantum of information. *Id.* at 337-39. The Court also observed that the forfeiture was orders of magnitude greater than the $5,000 maximum fine imposed under the applicable Sentencing Guidelines. *Id.* at 339-40, Finally, the Court noted that there had been no evidence or

9

argument below regarding Bajakajian's ability to pay the forfeiture or any threat that forfeiture posed to his livelihood. *Id.* at 340 n.15. So while this case does not apply those factors, they are clearly among those a lower court must consider if the penalized party has made a factual record for them. *See also Timbs*, 139 S. Ct. at 688 (quoting *Browning-Ferris*, 492 U.S. at 271) ("As relevant here, Magna Carta required that economic sanctions be 'proportioned to the wrong' and '*not be so large as to deprive [an offender] of his livelihood.*'") (emphasis added).

Since the Supreme Court articulated the "grossly disproportional" standard in *Bajakajian*, this Court has developed factors for applying the standard. *United States v. Mackby*, 261 F.3d 821, 829-30 (9th Cir. 2001), states how the Ninth Circuit determines if the Excessive Fines Clause applies to a federal statutory civil penalty. "[A] civil sanction is punitive" depending on (1) "the language of the statute creating the sanction," (2) "the sanction's purpose(s)," (3) "the circumstances in which the sanction can be imposed," and (4) "the historical understanding of the sanction." *Mackby*, 261 F.3d at 830 (quoting *Louis v. Commissioner of Internal Revenue*, 170 F.3d 1232, 1236 (9th Cir. 1999) (citing *Bajakajian*, 524 U.S. at 327-32)). If a sanction is punitive, then under *Mackby* and

*Bajakajian*, it is excessive if it is grossly disproportional to the gravity of the defendant's offense. *Mackby*, 261 F.3d at 829.

*United States v. $100,348 in U.S. Currency*, 354 F.3d 1110 (9th Cir. 2004), identifies four factors used by the Ninth Circuit based on *Bajakajian* to review excessiveness: "(1) nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused." *Id.* at 1122 (citing *Bajakajian*, 524 U.S. at 337-40). This list, however, fails to include the defendant's ability to pay or whether the sanction would deprive the defendant of a livelihood. Since *Browning-Ferris*, *Bajakajian*, and *Timbs* all recognize these factors as purposes of the Clause, this Court should not read *$100,348* as foreclosing their consideration. *See Browning-Ferris*, 492 U.S. at 271; *Bajakajian*, 524 U.S. at 340 n.15; *Timbs*, 139 S. Ct. at 688.

From this background on the Excessive Fines Clause, we turn now to whether the Clean Water Act's civil penalty provisions are punitive, and thus subject to the Clause.

This part of the analysis is straightforward. As in *Bajakajian*, this Court should have no difficulty in holding that the Clean Water Act civil penalty provisions are punitive and thus subject to Excessive Fines Clause limits. In *Tull*, 481 U.S. 412, the Supreme Court held that civil penalties authorized under the Clean Water Act, 33 U.S.C. § 1319(d),[3] are at least partly punitive in nature, *id.* at 422-23, and therefore a defendant is entitled to a jury trial on liability under the Seventh Amendment, *id.* at 425.

While *Tull*'s holding is under the Seventh Amendment, its conclusion that Subsection 1319(d) is punitive is clearly applicable to the question under the Excessive Fines Clause. Since Subsection 1319(d) is at least partly punitive in nature, civil penalties under the Clean Water Act are limited by the Excessive Fines Clause.

---

[3] The Supreme Court noted that at the time *Tull* was argued, this subsection did not include the various factors currently set forth, but instead simply set an upper bound for daily penalties at $10,000. The current statutory factors were originally set out in an EPA policy memorandum, and were added to the statute by Congress while *Tull* was pending. The Court in *Tull* recognized the newly added factors to the statute, without affecting its conclusion that the statute is punitive. *Tull*, 481 U.S. at 422 n.8.

## II. This Court should hold that the $3.7 million penalty imposed below violates the Excessive Fines Clause

The $3.7 million penalty imposed in this case, reviewed by this Court *de novo*, clearly violates the Clause. First, as in *Bajakajian*, the penalty was imposed for essentially a paperwork violation: failing to have an up to date stormwater pollution prevention plan. *See Bajakajian*, 524 U.S. at 337 ("Respondent's crime was solely a reporting offense.").

Second, the $3.7 million civil penalty is even more disproportionate to Corona Clay Co.'s roughly $10,000 in avoided costs than the $357,000 in *Bajakajian* to the $5,000 maximum fine. In that case the disproportion was 70 to 1. *See* 524 U.S. at 339-40. In this case it is roughly 370 to 1.

Third, analogously to *Bajakajian*, Corona Clay Co. did no harm to the environment. Its adjudicated violations (if affirmed by this Court) were "non-discharge" (i.e., paperwork) violations as Inland Empire WaterKeeper concedes, and deprived the government of nothing other than an up to date plan. *Bajakajian*, 524 U.S. at 339. Even *if* the retention basin at the site did not meet the technical requirements to be a BMP, the evidence adduced by Corona Clay Co. is that it worked for its purpose, to hold stormwater on the property instead of letting it run off, and WaterKeeper failed to convince a jury that *any* stormwater (let alone

13

any polluted stormwater) from Corona Clay Co.'s site ever entered protected and regulated waters. Corona Clay Co.'s well documented good faith efforts to comply with its stormwater permitting requirements also support this aspect of the analysis—the Court is not dealing with a scofflaw here.

Fourth, the $3.7 million civil penalty is beyond Corona Clay Co.'s ability to pay and will immediately render the company bankrupt and close it, destroying the livelihood of not only its owners, but its 16 employees. As Corona Clay Co. demonstrates in its Brief, the District Court's penalty exceeds the last two years of the company's (pre-pandemic) revenue, and is more than triple its current net assets. This high a penalty violates the "prime directive" of Magna Carta, the English Bill of Rights of 1689, and our Constitution's Excessive Fines Clause, that fines not be so high as to deprive anyone of their livelihood. *See Browning-Ferris*, 492 U.S. at 271; *Bajakajian*, 524 U.S. at 340 n.15; *Timbs*, 139 S. Ct. at 688.

## CONCLUSION

This Court should vacate the $3.7 million civil penalty imposed by the District Court below.

DATED: October 21, 2020.

Respectfully submitted,

s/ Anthony L. François
ANTHONY L. FRANÇOIS

*Attorney for Amici Curiae*

## STATEMENT OF RELATED CASES

Amici Curiae are aware of no related cases within the meaning of Circuit Rule 28-2.6.

# FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS
## 9TH CIR. CASE NUMBERS 20-55420, 20-55678

I am the attorney or self-represented party.

**This brief contains 2,905 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ]    complies with the word limit of Cir. R. 32-1.

[ ]    is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X]    is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ]    is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ]    complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ]    it is a joint brief submitted by separately represented parties;

    [ ]    a party or parties are filing a single brief in response to multiple briefs; or

    [ ]    a party or parties are filing a single brief in response to a longer joint brief.

[ ]    complies with the length limit designated by court order dated ____.

[ ]    is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Anthony L. François            **Date:** October 21, 2020.
            ANTHONY L. FRANÇOIS

# CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Anthony L. François
ANTHONY L. FRANÇOIS