THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
No. 20-55420

---

INLAND EMPIRE WATERKEEPER, A PROJECT OF ORANGE
COUNTY COASTKEEPER; ORANGE COUNTY COASTKEEPER,

Plaintiffs – Appellants,

v.

CORONA CLAY CO.,

Defendant – Appellee

---

**PLAINTIFFS-APPELLANTS' THIRD APPEAL BRIEF**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

CHRISTOPHER SPROUL
Environmental Advocates
5135 Anza Street
San Francisco, CA 94121
Telephone: (415) 533-3376
Fax:          (415) 358-5695
csproul@enviroadvocates.com

SARAH SPINUZZI
Orange County Coastkeeper
Inland Empire Waterkeeper
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone: (714) 850-1965
sarah@coastkeeper.org

JENNIFER F. NOVAK
Law Office Of Jennifer F. Novak
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775
novak@jfnovaklaw.com

## Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiffs-

Appellants Inland Empire Waterkeeper and Orange County

Coastkeeper state that they have no parent companies, subsidiaries, or

affiliates that have issued shares to the public.

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   ARGUMENT ........................................................................................4

    A.    Coastkeeper Has Standing.............................................................4

        1. The District Court Properly Held Coastkeeper to Have

        Standing......................................................................................... 4

        2. Corona Is Wrong That the Jury Verdict Defeated

        Coastkeeper's Standing.................................................. 9

            a.  Corona's Contentions Concerning What the Jury Found

            Lack Merit ............................................................... 9

            b.  Coastkeeper Need Not Prove Discharges to Temescal

            Creek to Have Standing............................................. 11

        3. Corona Is Wrong That Coastkeeper Lacks Standing to

        Proceed Against Procedural CWA Violations.................... 17

        4. Corona Is Wrong That Coastkeeper's Declarations Provided

        Insufficient Evidence for Standing.................................. 20

        5. Corona Is Wrong That the District Court Only Found

        Standing for Coastkeeper to Pursue Claims One and

        Five ......................................................................... 27

B.    The District Court Erred in Failing to Instruct the Jury That the Clean Water Act Authorizes Citizen Suits Based on Violation of Any NPDES Permit Condition...................... 28

    1.  The Court Should Give Deference to the State Board's Interpretation of the Clean Water Act ............................. 29

    2.  Corona's Contentions Concerning Statutory Limits on Citizen Suit Enforcement Lack Merit .............................. 33

    3.  The District Court Erroneously Failed to Instruct the Jury Concerning Corona's Discharges into Temescal Creek..................................................................... 37

    4.  Coastkeeper Was Prejudiced By the District Court's Departure from Its Law of the Case Summary Judgment Ruling...................................................................... 39

C.    The District Court Did Not Award Summary Judgment on "Wholly Past" CWA Violations .................................... 42

D.    The District Court Properly Denied Corona's Rule 60 Motion ................................................................... 51

E.    The District Court's Civil Penalty Assessment Should Be Affirmed ................................................................. 53

1. Corona Waived Some or All of Its Challenge to the Penalty Assessment ...................................................................... 53

2. The District Court's Civil Penalty Assessment Is Appropriate Under 33 U.S.C. § 1319(d)'s Factors ....................................................................................... 54

3. The District Court's Civil Penalty Assessment Did Not Violate the Eighth Amendment ......................................... 63

F. The District Court's Injunction Should Be Affirmed ........ 68

G. The District Court Improperly Denied Coastkeeper's Attorneys' Fees and Costs .................................................... 72

III. CONCLUSION ................................................................................ 74

STATEMENT OF RELATED CASES ................................................. 75

CERTIFICATE OF COMPLIANCE .................................................... 76

CERTIFICATE OF SERVICE .............................................................. 78

CASES

*Alaska Cmty. Action on Toxics v. Aurora Energy Servs., LLC,*

    765 F.3d 1169 (9th Cir. 2014) ................................................... 32

*Amoco Prod. Co. v. Village of Gambell,*

    480 U.S. 531 (1987) .................................................................. 69

*Anderson v. Liberty Lobby, Inc.,*

    477 U.S. 242 (1986) .................................................................. 48

*Askins v. Ohio Dept. of Agriculture,*

    809 F.3d 868 (6th Cir. 2016) ................................................... 34

*Atkinson v. Prudential Property Co.,*

    43 F.3d 367 (8th Cir. 1994) ..................................................... 52

*Auer v. Robbins,*

    519 U.S. 452 (1997) .................................................................. 30

*Backlund v. Barnhart,*

    778 F.2d 1386 (9th Cir. 1985).................................................. 15

*Berardelli v. Allied Services Institute of Rehabilitation Medicine,*

    900 F.3d 104 (3d Cir. 2018) ..................................................... 41

*Borden Ranch P'ship v. U.S. Army Corps of Eng'rs,*

No. 97–0858, 1999 WL 1797329 (E.D. Cal. Nov. 8, 1999) ........ 57

*Borden Ranch P'ship v. United States Army Corps of Eng'rs,*

261 F.3d 810 (9th Cir. 2001) ...................................................... 55

*Cal. Sportfishing Prot. All. v. River City Waste Recyclers, Ltd. Liab.*
*Co.,*

205 F. Supp. 3d 1128 (E.D. Cal. 2016) ..................................... 46

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New*
*York,*

451 F.3d 77 (2d Cir. 2006) .............................................54, 55, 57

*Cent. Delta Water Agency v. United States,*

306 F.3d 938 (9th Cir. 2002) ...................................................... 6

*Chase Bank USA, N.A. v. McCoy,*

562 U.S. 195 (2011) .................................................................... 30

*Chevron U.S.A., Inc. v. Natural Resources Defense Council,*

467 U.S. 837 (1984) .........................................................20, 33

*Christianson v. Colt Indus. Operating Corp.,*

486 U.S. 800 (1988) .................................................................... 40

*Christopher v. SmithKline Beecham Corp.,*

567 U.S. 142 (2012) .................................................................... 31

*Citizens for Better Forestry v. United States Dep't of Agriculture*,

    341 F.3d 961 (9th Cir. 2003) ...................................................... 17

*City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*,

    254 F.3d 882 (9th Cir. 2001) ..................................................... 39

*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*,

    65 F. Supp. 2d 1129 (E.D. Wash. 1999) .................................. 27

*Coastal Envtl. Rights Found. v. Am. Recycling Int'l, Inc.*,

    No. 17-00425, 2017 U.S. Dist. LEXIS 202649 (S.D. Cal. Dec. 8,

    2017) .......................................................................................... 46

*Conlon v. United States*,

    474 F.3d 616 (9th Cir. 2007) ..................................................... 38

*Covington v. Jefferson County*,

    358 F.3d 626, 639 (9th Cir. 2004) ............................................. 5

*Cty. of Maui v. Haw. Wildlife Fund*,

    140 S. Ct. 1462 (2020) ........................................................10, 38

*Ctr. for Biological Diversity v. Marina Point Dev. Assocs.*,

    434 F. Supp. 2d 789 (C.D. Cal. 2006)....................................... 57

*Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*,

    807 F.3d 1031 (9th Cir. 2015) ................................................... 17

*Daubert v. Merrell Dow Pharm.*, Inc.,

    509 U.S. 579 (1993) ...................................................... 70-71

*Ecological Rights Found. v. Pac. Lumber Co.*,

    230 F.3d 1141 (9th Cir. 2000) ......... 4, 5, 8, 12, 17, 19, 25, 31, 34

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*,

    874 F.3d 1083 (9th Cir. 2017) .............................................. 54

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,

    824 F.3d 507 (5th Cir. 2016) ...............................................57, 58

*Friends of Earth v. Conrail*,

    768 F.2d 57 (2d Cir. 1985)...................................................... 26

*Friends of the Earth, Inc. v. Crown Central Petroleum Corp.*,

    95 F.3d 358 (5th Cir. 1996) ..........................................16, 19, 20

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,

    528 U.S. 167 (2000) ...............................................5, 8, 12, 22-25

*Griggs v. Provident Consumer Discount Co.*,

    459 U.S. 56 (1982) ................................................................ 51

*Gwaltney of Smithfield v. Chesapeake Bay Found.*,

    484 U.S. 49 (1987) ...........................................33, 34,35, 41, 51

*Haw.'s Thousand Friends v. City & Cty. of Honolulu,*

    821 F. Supp. 1368 (D. Haw. 1993) ............................................. 57

*In re Pharmacy Benefit Managers Antitrust Litig.,*

    582 F.3d 432 (3d Cir. 2009) ...................................................... 41

*INS v. Aguirre-Aguirre,*

    526 U.S. 415 (1999) ................................................................. 30

*Kelly v. United States EPA,*

    203 F.3d 519 (7th Cir. 2000) .................................................... 67

*Kona Enterprises, Inc. v. Estate of Bishop,*

    229 F.3d 877 (9th Cir. 2000)..............................15, 54, 57, 61, 70

*Krim v. PCOrder.com,*

    402 F.3d 489 (5th Cir. 2005) ...................................................... 6

*Leslie Salt Co. v. United States,*

    55 F.3d 1388 (9th Cir. 1995) .................................................... 55

*Lujan v. Defs. of Wildlife,*

    504 U.S. 555 (1992) ................................................................. 17

*Lujan v. Nat'l Wildlife Fed'n,*

    497 U.S. 871 (1990) ...........................................................25, 26

*McDonough v. Aetna Life Ins. Co.,*

783 F.3d 374 (1st Cir. 2015) ...................................................... 54

*Nat. Res. Def. Council v. City of L.A.,*

725 F.3d 1194 (9th Cir. 2013) ................................................. 29

*Nat. Res. Def. Council v. Sw. Marine,*

236 F.3d 985 (9th Cir. 2000) ...................................54, 55, 68, 70

*Nat. Res. Def. Council v. Watkins,*

954 F.2d 974 (4th Cir. 1992) ................................................. 26

*Newdow v. Lefevre,*

598 F.3d 638 (9th Cir. 2010) ................................................. 40

*N.Y. Pub. Interest Research Grp. v. Whitman,*

321 F.3d 316 (2d Cir. 2003) ..................................................... 7

*Nyk Line (n. Am.) v. Burlington N. & Santa Fe Ry. Co.,*

222 F. Supp. 2d 1176 (C.D. Cal. 2002) .................................... 27

*Pimentel v. City of L.A.,*

974 F.3d 917 (9th Cir. 2020) ................................................. 65

*Public Interest Research Group v. Powell Duffryn Terminals,*

913 F.2d 64 (3d Cir. 1990) ....................................................... 7

*Public Interest Research Group v. Powell Duffryn Terminals, Inc.,*

720 F. Supp. 1158 (D.N.J. 1989) ............................................ 62

*Public Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,*

   123 F.3d 111 (3d Cir. 1997).......................................................... 19

*RE Sources for Sustainable Communities v. Pac. Int'l Terminals, Inc.,*

   No. 11-2076, 2013 WL 11233980 (W.D. Washington, July 23, 2013) ...................................................................................... 16

*Resurrection Bay Conservation Alliance v. City of Seward,*

   640 F.3d 1087 (9th Cir. 2011) .................................................... 72

*Rust* v. *Sullivan,*

   500 U.S. 173 (1991) ..................................................................... 30

*S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.,*

   690 F.2d 1235 (9th Cir. 1982) .................................................... 48

*San Luis & Delta-Mendota Water Auth. v. United States,*

   672 F.3d 676 (9th Cir. 2012) ....................................................... 5

*Santa Monica Baykeeper v. Int'l Metals Ekco, Ltd.,*

   619 F. Supp. 2d 936 (C.D. Cal. 2009)........................................ 46

*Santa Monica Baykeeper v. Kramer Metals, Inc.,*

   619 F. Supp. 2d 914 (C.D. Cal. 2009)........................................ 46

*Satterfield v. Simon & Schuster, Inc.,*

569 F.3d 946 (9th Cir. 2009) ...................................................... 30

*Save our Sonoran, Inc. v. Flowers,*

408 F. 3d 1113 (9th Cir. 2005) .................................................. 69

*S.F. Baykeeper v. W. Bay Sanitary Dist.,*

791 F. Supp. 2d 719 (N.D. Cal. 2011) ...................................... 25

*S.F. Baykeeper v. W. Bay Sanitary Dist.,*

No. 09-5676, 2011 U.S. Dist. LEXIS 54883 (N.D. Cal. May 23,

2011) ......................................................................................... 26

*Sierra Club v. Chevron U.S.A., Inc.,*

834 F.2d 1517 (9th Cir. 1987) .................................................. 60

*Sierra Club v. City of Jackson,*

34 Fed. Appx. 151 (5th Cir. March 19, 2002) .......................... 20

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.,*

73 F.3d 546 (5th Cir. 1996) ............................................... 7, 25

*Skidmore v. Swift & Co.,*

323 U.S. 134 (1944) .................................................................. 30

*Southeast Alaska Conservation Council v. Army Corps of Engineers,*

472 F.3d 1097 (9th Cir. 2006) .................................................. 69

*St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*,

574 F.3d 1054 (9th Cir. 2009) ..............................................72, 73

*Tull v. United States*,

481 U.S. 412 (1987) ...................................................... 54

*United States v. 132,245.00 in United States Currency*,

764 F.3d 1055 (9th Cir. 2014) ..............................................64, 65

*United States v. 8136 S. Dobson St.*,

125 F.3d 1076 (7th Cir. 1997) .................................................. 52

*United States v. Alexander*,

106 F.3d 874 (9th Cir. 1997) .................................................. 40

*United States v. Allegheny Ludlum Corp.*,

187 F. Supp. 2d 426 (W.D. Pa. 2002) ........................................ 59

*United States v. Bajakajian*,

524 U.S. 321 (1998) ..........................................................63, 64

*United States v. Mackby*,

261 F.3d 821 (9th Cir. 2001) .................................................. 68

*United States v. Mackby*,

339 F.3d 1013 (9th Cir. 2003) .................................64, 65, 66, 67

*United States v. Mead Corp.*,

533 U.S. 218 (2001) .......................................................... 30

*United States v. Metro. St. Louis Sewer Dist.,*

883 F.2d 54 (8th Cir. 1989) ........................................... 26

*United States v. Mun. Auth. of Union Township,*

150 F.3d 259 (3d Cir. 1998)........................................56, 59

*United States v. Smithfield Foods, Inc.,*

972 F. Supp. 338 (E.D. Va. 1997)................................. 59

*United States v. Smithfield Foods, Inc.,*

191 F.3d 516 (4th Cir. 1999) .....................................54, 59

*United States v. Students Challenging Regulatory Agency Procedures,*

412 U.S. 669 (1973) ...................................................... 7

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State,*

454 U.S. 464 (1982) ...................................................... 6

*Video Software Dealers Ass'n v. Schwarzenegger,*

556 F.3d 950 (9th Cir. 2009)........................................ 47

*Weinberger v. Romero-Barcelo,*

456 U.S. 305 (1982) ...................................................... 68

*White Tanks Concerned Citizens, Inc. v. Strock,*

563 F.3d 1033 (9th Cir. 2009) ................................................... 6

*Wood v. Ryan,*

759 F.3d 1117 (9th Cir. 2014) ................................................. 52

## STATUTES

33 U.S.C. § 1318 ................................................................35, 36

33 U.S.C. § 1319(d)......................................................54, 55, 56, 67

33 U.S.C. § 1342 ...................................................................... 36

33 U.S.C. § 1342(b)(2)(A)........................................................... 36

33 U.S.C. § 1365 ...................................................................... 34

33 U.S.C. § 1365(a)(1)........................................................32, 33, 35

33 U.S.C. § 1365(d) .................................................................. 71

33 U.S.C. § 1365(f)..........................................................35, 35, 36

## REGULATIONS

40 C.F.R. § 19.4 ...................................................................... 67

40 C.F.R. § 122.41(a) ................................................................ 32

## RULES

Fed. R. Civ. P. 36(a)............................................................................ 38

Fed. R. Civ. P. 59(e)....................................................................15, 51

Fed. R. Civ. P. 60 .............................................................................. 15

Fed. R. Evid. 702 .............................................................................. 70

5th Circuit Rule 47.5.4 ..................................................................... 20

Ninth Circuit Rule 36-3(a) ............................................................... 20

## TREATISES

Wright & Miller, 18B Federal Practice and Procedure § 4478.1

    (2d ed. 1987)……………………………………………………….41

## I.   INTRODUCTION

This Clean Water Act ("CWA") citizen suit concerns Corona Clay Co. ("Corona")'s violations of the California State Water Resources Control Board ("State Board")'s General Permit for Storm Water Discharges Associated with Industrial Activities ("IGP")[1] at the Defendant's clay recycling facility in Corona, California (the "Facility"). The District Court correctly issued summary judgment to Inland Empire Waterkeeper and Orange County Coastkeeper (collectively, "Coastkeeper") holding Corona liable for failure to implement Best Management Practices ("BMPs") constituting "Best Available Technology Economically Achievable" ("BAT") and "Best Conventional Pollutant Control Technology" ("BCT") as required by the IGP. The District Court further correctly issued summary judgment holding Corona liable for failure to maintain an adequate Storm Water Pollution Prevention Plan ("SWPPP") for managing stormwater discharges. In its summary judgment decision, the District Court properly rejected Corona's arguments that to prevail on these claims,

---

[1]  Coastkeeper inadvertently omitted the definition of the term "IGP" in its Opening Brief and corrects that error here.

Coastkeeper had to prove that Corona had discharged stormwater to waters also in violation of the CWA. However, the District Court then departed from the law of the case and erroneously and contradictorily instructed the jury that it could not find Corona liable on Coastkeeper's remaining claims for failure to monitor its stormwater discharges and file various reports without finding that Corona had discharged unlawfully discharged stormwater into waters. Coastkeeper's Opening Brief (Dkt. 19-1) and the *amicus* brief submitted by the State Board ("State Board *Amicus*" or "Board *Amicus*") detail why the District Court's summary judgment ruling was correct, but its jury instruction and the jury verdict erroneous. This Court should give deference to the State Board *Amicus* as it expresses the well-reasoned conclusions of the regulatory agency with authority to implement the CWA in California.

Corona's contentions that it should prevail because Coastkeeper lacks standing are meritless. Coastkeeper's standing declarants well-established their enjoyment of Temescal Creek ("the Creek"), the water into which the Facility discharges, and explained their reasonable beliefs that the Facility's discharges harm or risk harming the Creek and thus impair their enjoyment of the Creek. Corona is wrong that

Coastkeeper had to prove discharges and actual environmental harm to the Creek to have standing. Corona is further wrong that the jury verdict established that Corona never has discharged stormwater to the Creek, a proposition which contradicts Corona's own repeated admissions, including a binding Rule 34 admission, that stormwater from the Facility flows to Temescal Creek.

The District Court's civil penalty assessment and injunction should be upheld as Corona cannot show that either constituted an abuse of discretion. Moreover, the civil penalty does not violate the Eighth Amendment because it is not grossly disproportionate to the offenses proven.

Finally, the District Court's denial of attorneys' fees and costs to Coastkeeper plainly contradicts this Court's precedents and should be reversed with remand to the District Court to calculate an appropriate attorneys' fees and costs award.

## II.  ARGUMENT

### A. Coastkeeper Has Standing.

#### 1. The District Court Properly Held Coastkeeper to Have Standing.

Corona's contentions that the District Court erred in finding Coastkeeper to have Article III standing are erroneous.[2] Opp. at 49-59 (Dkt. 41-1). The District Court well understood and quoted this Court's leading environmental standing case:

> "The plaintiff need not show actual environmental harm to body of water in question in order to satisfy the fairly traceable inquiry for a Clean Water Act lawsuit, as doing would 'confuse[] the jurisdictional injury (does the court have power under Article III to hear the case?) with the merits injury (did the defendant violate the law?).'"

ER00076[3] (quoting *Ecological Rights Foundation v. Pacific Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000)); *see generally* ER00073-77.

---

[2] Corona apparently erroneously suggests there is an additional CWA "statutory standing" test beyond Article III standing (*e.g.*, Opp. at 1, 15). However, "The CWA's citizen suit provision extends standing to the outer boundaries set by the 'case or controversy' requirement of Article III of the Constitution."*Ecological Rights Foundation v. Pacific Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000).

[3] References to the various Excerpts of Record are as follows: Coastkeeper's opening Excerpts of Record--"ER," Corona's

*Pacific Lumber* follows the seminal Supreme Court decision,

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC),*

*Inc.*, which instructs that "[t]he relevant showing for Article III

standing is not injury to the environment but injury to the plaintiff."

528 U.S. 167, 181 (2000). With the relevant injury not being harm to

the environment but harm to the plaintiff, a standing witness's

reasonable concern that pollutant discharges *may now or in the future*

impair water quality in waters the witness uses establishes the

required injury. *Laidlaw,* 528 U.S. at 181-83; *Pacific Lumber*, 230 F.3d

at 1151. Moreover, the mere credible *threat* of injury, *even in the*

*future*, suffices for standing:

> [T]he possibility of future injury may be sufficient to confer standing on plaintiffs; threatened injury constitutes "injury in fact." *Central Delta I*, 306 F.3d at 947 (citing *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000)).

*San Luis & Delta-Mendota Water Auth. v. United States*, 672 F.3d 676,

701 (9th Cir. 2012); *Covington v. Jefferson County*, 358 F.3d 626, 639,

641 (9th Cir. 2004) (sufficient for standing that defendant's actions

"caused 'reasonable concern' of injury to" the plaintiff; evidence that

---

Supplemental Excerpts of Record--"Supp. ER," and Plaintiff Coastkeeper's Supplemental Excerpts of Record--"Plts. Supp. ER."

plaintiffs observed leaks from landfill and "fear that this liquid will contaminate their property" sufficed to show injury-in-fact); *Central Delta Water Agency v. United States*, 306 F.3d 938, 948 (9th Cir. 2002) ("'to require actual evidence of environmental harm, rather than an increased risk based on a violation of the statute, misunderstands the nature of environmental harm'….a credible threat of harm is sufficient to constitute actual injury for standing purposes") (internal citations omitted); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472, (1982) (party must show he "has suffered some actual or *threatened* injury….) (emphasis added); *Sierra Club v. United States EPA*, 762 F.3d 971, 974, 977 (9th Cir. 2014) (finding standing for suit challenging future powerplant project, holding "'evidence of a credible threat to the plaintiff's physical well-being from…pollutants' may establish an injury in fact") (internal citation omitted); *White Tanks Concerned Citizens, Inc. v. Strock*, 563 F.3d 1033, 1039 (9th Cir. 2009) (finding standing to challenge future development project that, if built, could harm the organization's members); *Krim v. PCOrder.com*, 402 F.3d 489, 500 n.55 (5th Cir. 2005) ("the Supreme Court [in *Valley Forge*] has expressly held that a

'threatened injury' will satisfy the 'injury in fact' requirement for [constitutional] standing") (internal citations omitted); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 556 (5th Cir. 1996) ("[w]hether the affiants were 'concerned' or 'believed' or 'knew to a moral certainty' that produced water would adversely affect their activities on the bay is a semantic distinction that makes little difference in the standing analysis").

Moreover, "the injury-in-fact necessary for standing 'need not be large, an identifiable trifle will suffice.'" *N.Y. Pub. Interest Research Grp. v. Whitman*, 321 F.3d 316, 326 (2d Cir. 2003); *see also United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) ("an identifiable trifle is enough for standing"); *Public Interest Research Group v. Powell Duffryn Terminals,* 913 F.2d 64, 71 (3d Cir. 1990); *Cedar Point*, 73 F.3d at 557 & n.23 ("CWA cases from other circuits corroborate our observation that the threshold for the injury requirement is fairly low."). Reduced enjoyment or curtailment of even infrequent recreational, educational, or spiritual use of a water body due to fears of environmental

degradation of the water is sufficient to establish an injury-in-fact. *Laidlaw*, 528 U.S. at 183; *Pacific Lumber Co.*, 230 F.3d at 1150.

The District Court properly applied this precedent in holding that Coastkeeper had demonstrated the requisite injury-in-fact, traceability, and redressability for standing with three declarations from Coastkeeper's members. ER00076-77. The District Court noted that these declarations established that Coastkeeper's members use and enjoy Temescal Creek, have noticed declining water quality in the Creek from pollution, and this decline impairs their enjoyment. ER00075. As the District Court noted, these members stated belief that stormwater discharges from the Facility are contributing to this water quality decline, satisfying traceability requirements for Article III standing. ER00075-76. The District Court reasoned that Coastkeeper's requested declaratory and injunctive relief could curb these impacts, satisfying redressability requirements for Article III standing. ER00077.

### 2. Corona Is Wrong That the Jury Verdict Defeated Coastkeeper's Standing.

Corona's contention that the jury's verdict defeated Coastkeeper's standing lacks merit for several reasons, stated below.

### a. Corona's Contentions Concerning What the Jury Found Lack Merit.

Corona erroneously asserts that the jury held that Corona has never discharged stormwater into Temescal Creek. Opp. at 52. The jury's answer to an ambiguous Special Verdict Form cannot reasonably be construed as such a finding. The Special Verdict Form asked the jury to answer whether Corona "discharged pollutants from a point source *into* streams or waters that qualify as jurisdictional 'waters of the United States'...." (emphasis added). ER00416. The District Court failed to instruct the jury as to what the law defines as a discharge "into" waters. ER00192-00194, 00198. Without better instruction, the jury easily could have answered the Special Verdict Form's definitive first question "no" on a finding that Corona's stormwater runoff is carried through a pipe that discharges to the floodplain adjacent to Temescal Creek and then flows over the floodplain indirectly into the Creek

*rather than directly into Temescal Creek.* As discussed in Coastkeeper's Opening Brief (at 37-38), if Corona's stormwater runoff flows indirectly a short distance into the Creek, it is regulated under the CWA. *Cty. of Maui v. Haw. Wildlife Fund*, 140 S. Ct. 1462, 1476 (2020). More to the present point, even under Corona's theory that standing requires polluted stormwater from the Facility reaching the Creek, Coastkeeper would have standing as its members would be detrimentally impacted by polluted stormwater flowing indirectly from the Facility into Temescal Creek. The point remains that Coastkeeper had, as discussed in the next section below, extensive evidence that the Facility's stormwater has flowed and does flow into Temescal Creek. The jury's ambiguous verdict does not defeat that evidence.

The Special Verdict Form was further erroneous in equating all stormwater discharges with CWA "violations." ER00416. Notably, Claim Two's contention that Corona had discolored the Creek was the only discharge violation claim before the jury as the Court had granted Coastkeeper summary judgment on its Claim One that Corona had violated the IGP's requirements to treat stormwater to a BAT and BCT level prior to discharge. ER00080-81. Accordingly, the jury could have

reached a defense verdict by concluding that while Corona has discharged stormwater into Temescal Creek, it has not violated the restrictions on causing creek discoloration as alleged in Coastkeeper's Claim Two, the only discharge violation before the jury. A jury finding that Corona had not discharged stormwater in a manner violating the IGP's limitations on not discoloring the Creek *would not* equal a finding that Corona had never discharged stormwater to Temescal Creek post-complaint.

### b. Coastkeeper Need Not Prove Discharges to Temescal Creek to Have Standing.

Even if the jury verdict could be construed as a finding that Corona has never discharged pollutants to Temescal Creek post-complaint, this would not defeat Coastkeeper's standing. Corona erroneously argues that proving standing was a merits element that Coastkeeper had to demonstrate *to invoke jurisdiction to bring its CWA claims* and that standing only exists when a citizen proves post-complaint *discharge* violations. Opp. at 36-37.

One, as discussed in section II.A.3. below, Corona is wrong that standing is limited to citizens that prove post-complaint *discharge*

violations. Coastkeeper proved post-complaint CWA *procedural* violations which would be enough for standing even under Corona's erroneous theory that prevailing on the merits is required for standing. Two, *Laidlaw* and *Pacific Lumber* unequivocally instruct that *demonstrating standing* is separate from proving CWA claims on their merits, and standing can exist even when plaintiffs ultimately lose on the merits. 528 U.S. at 181-83 (drawing distinction between standing and merits showings); *Pacific Lumber*, 230 F.3d at 1151-52 (Plaintiff "need not prove to a scientific certainty that Pacific Lumber has, in fact, discharged pollutants in violation of its permits *in order to obtain standing*; this, as just explained, is one of the merits questions in the case.") (emphasis original). Instead, as discussed in section II.A.1. above, to have standing, Coastkeeper need only demonstrate that its members reasonably fear that stormwater discharges from the Facility, now or in the future, would harm Temescal Creek, a water that they use, in manners that would degrade their enjoyment of the Creek. The District Court properly found and the record well establishes that Coastkeeper's members have had the requisite reasonable apprehension concerning the Facility's stormwater discharges.

Corona contends that Coastkeeper presented no evidence that stormwater runoff from the Facility has reached Temescal Creek to create even a potential for environmental harm other than to argue that water flows downhill from the Facility to the Creek. Opp. at 52. Again, Corona's misapprehends that the question for standing is not whether stormwater from the Facility has actually reached Temescal Creek, but whether Coastkeeper's standing witnesses reasonably believed it has or will and will damage the Creek and their enjoyment of it. Moreover, Corona's assertion is false; Coastkeeper offered evidence that stormwater runoff from the Facility has in the past and will likely in the future reach Temescal Creek, and, more to the point, that its members' belief that this is true is reasonable. Coastkeeper's undisputed evidence includes: (1), the Facility is located a short distance, 1100 feet, uphill from Temescal Creek. Supp. ER00140. (2), stormwater laden with various pollutants flows from the Facility into a pipe that transmits stormwater downhill under a road and onto a floodplain adjacent to and still uphill from Temescal Creek. ER01714-15, 01837, Plts. Supp. ER00265-268. (3), Corona's Notice of Intent to be covered by the IGP filed with the State Board expressly identified

13

Temescal Creek as the waterway that it discharges stormwater into, the basis for it requiring CWA permit authorization. Plts. Supp. ER00246. (4), Corona's SWPPPs, which the IGP mandates it prepare, identified Temescal Creek as the water where its stormwater flows. ER01617, 01827; Plts. Supp. ER00191. (5), in response to a Coastkeeper Request for Admission, Corona "[a]dmitted that discharges of stormwater from the industrial area on the property...indirectly flows to Temescal wash." ER00093-94. (6), Corona's own expert acknowledged that stormwater from the Facility flows into Temescal Creek. ER01250 ("Although the runoff from the Corona Clay site eventually reaches the Santa Ana River Reach 3, the Corona Clay discharge initially reaches Temescal Creek."). (7), the California Regional Water Quality Control Board for the Santa Ana Region ("Regional Board"), which has oversight authority over Corona's stormwater discharges, repeatedly found in Notices of Violation that the Facility releases pollutant-laden stormwater, noting, for example, that the Facility's discharges created visible erosion. ER00787-88, 01726-27, 01733, 01714-15, 01724-25. (8), Coastkeeper's expert testified to the environmental harms from the Facility's discharges, explaining, for example, how clay particles carried

14

into the Creek from the Facility would smother fish eggs and deprive them of needed oxygen. ER00765-71, Plts. Supp. ER00257-58. (9), Coastkeeper's witness observed and photographed stormwater running off the Facility and into Temescal Creek during an April 2020 storm event.[4] ER00109-145. Under these circumstances, it was and remains

_____

[4] Coastkeeper submitted this evidence to the District Court post-trial to rebut arguments Corona asserted in its post-trial Rule 59(E) and 60(b) Motion (Supp. ER000005-35) that it had made changes that would prevent stormwater runoff from the Facility. Corona argued to the District Court that this post-trial evidence should be excluded as "untimely," adding that "post-trial briefing is not an appropriate vehicle for raising arguments or presenting evidence for the first time when they could have been raised earlier in the litigation." Plts. Supp. ER00002-04, 07, 09 (*citing Kona Enterprises, Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000)). Ignoring the contradiction, Corona offered its own new post-trial evidence and arguments in its Rule 59(E) and 60(b) Motion. Corona, as discussed further below, has also relied on this post-trial evidence extensively on appeal.

The District Court summarily denied Corona's Rule 60 Motion and therefore did not rule on the admissibility of the parties' competing post-judgment evidence. ER00001-2, 01948. Rule 60 allows courts to reconsider judgments based on "newly discovered evidence," thus necessarily implying the potential admissibility of newly discovered post-judgment evidence. *See Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). On appeal, this Court should *not* admit Corona's post-trial evidence without admitting Coastkeeper's rebuttal evidence. It would be untenable to allow only Corona to present new post-judgment evidence without hearing Coastkeeper's responsive evidence.

If post-judgment evidence is to be admitted, Corona lacks defensible basis for excluding Coastkeeper's newly discovered evidence: eyewitness observation in a post-judgment storm of stormwater flowing from the Facility into Temescal Creek.

eminently reasonable that Coastkeeper's members fear that stormwater runs off, or will in the future run off, from the Facility and carry pollutants into Temescal Creek, impairing their use and enjoyment of the Creek.

Corona argues that water goes downhill assertions do not suffice for standing, citing *Friends of the Earth, Inc. v. Crown Central Petroleum Corp.*, 95 F.3d 358 (5th Cir. 1996) and *RE Sources for Sustainable Communities v. Pac. Int'l Terminals, Inc.*, No. 11-2076, 2013 WL 11233980 (W.D. Washington, July 23, 2013). Opp. at 52. But Corona's strawman fails as Coastkeeper does not rely on a water goes downhill argument, but instead the nine evidentiary points recited above. Moreover, the *Crown Central* and *Pac. Int'l* decisions *Support* Coastkeeper's standing, holding that environmental plaintiffs can rely on expert opinion to show the traceability of their injuries to the defendant's conduct. *Crown Central*, 95 F.3d at 362; *Pac. Int'l*, 2013 WL 11233980 at *6. As noted, both Coastkeeper and Corona's expert indicated that Corona's stormwater runoff flows into Temescal Creek and the former indicated that it poses environmental harm risks. ER01250, 00765-71.

### 3. Corona Is Wrong That Coastkeeper Lacks Standing to Proceed Against Procedural CWA Violations.

Relying solely on out-of-circuit precedent (which it misconstrues), Corona erroneously contends that Coastkeeper cannot have standing to proceed against procedural NPDES permit violations, at least not without proving a past discharge of pollutants to waters. Opp. at 32-34. Citizens have standing to pursue claims for failure to follow legally required procedures that "are designed to protect some threatened concrete interest of [theirs] that is the ultimate basis of [their] standing." *Citizens for Better Forestry v. United States Dep't of Agriculture*, 341 F.3d 961, 969 (9th Cir. 2003); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 n.8 (1992) (same); *Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, 807 F.3d 1031, 1043-44 (9th Cir. 2015) (same). While these cases analyze standing in the context of government agencies failing to follow required procedures, statutes imposing obligations on private parties to follow given procedures should not be treated differently. In either case, the law obligates defendants to undertake actions in a manner protective of the rights of others. *Pacific Lumber* should be viewed as at least implicitly

17

recognizing that citizens should have standing to pursue claims for private party violations of procedural obligations when it noted in its standing analysis discussion that "the Clean Water Act allows citizen suits based on violations of any conditions of an NPDES permit, even those which are purely procedural." 230 F.3d at 1151; *see also* Coastkeeper Opening Brief at 46-49 (discussing cases allowing CWA citizen suit claims for NPDES permit procedural violations).

The IGP procedural conditions that Corona violated are meant to protect the interests of members of the public who are concerned with the quality of waters they use. Coastkeeper's members have been and remain injured by Corona's failure to install adequate BMPs at the Facility as the IGP's mandate for BMPs is a prophylactic requirement designed to prevent stormwater pollution of waters such as Temescal Creek before it happens. *See, e.g.*, Board *Amicus* at 3-4, 8-12. Likewise, Coastkeeper's members have been injured by Corona's failure to have an adequate SWPPP for the Facility, as having such a SWPPP is again a prophylactic measure to prevent stormwater pollution before it happens. *See, e.g.*, Board *Amicus* at 3-4, 8-9. Coastkeeper's members have further been injured by Corona's failure to sample stormwater

18

discharges and report to the State Board sampling results and ERA measures designed to address elevated pollutant levels--as required by the IGP. Such information would inform Coastkeeper's members about the pollutant threats to Temescal Creek and whether Corona is appropriately addressing those threats. Accordingly, Coastkeeper and its members have standing to pursue claims that Corona failed to comply with these IGP procedural requirements.

Corona argues that to have standing in a CWA case, plaintiffs must prove pollutant discharge violations, even to bring claims for violation of NPDES procedural conditions, citing out-of-circuit authority, *Crown Central*, 95 F.3d at 362 and *Public Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111 (3d Cir. 1997). Opp. at 33-34. Such a rule would conflict with *Pacific Lumber*, Ninth Circuit authority *per se* allowing citizen suits for violations of any NPDES permit terms, including purely procedural requirements. But *Crown Central* and *Magnesium* are better read simply to hold that the plaintiffs there failed to establish that failure to follow the procedures in issue risked harm to them. *Crown Central*, 95 F.3d at 361-62 (noting that plaintiff had no evidence that discharges from the facility ended up

in water they were concerned about); *Magnesium*, 123 F.3d at 121-25 (noting that plaintiff had failed to show defendant's violations caused harm or threatened injury to the relevant waterway)., Reading *Crown Central* and *Magnesium Elektron* to merely join case law holding that procedures must be related to protecting the plaintiffs' interests for standing to sue over those procedures leaves the cases unhelpful to Corona. Coastkeeper has shown that the IGP's procedural requirements are closely related to protecting its members' interests.

### 4. Corona Is Wrong That Coastkeeper's Declarations Provided Insufficient Evidence for Standing.

Citing an unpublished decision which is not even Fifth Circuit precedent (*see* 5th Circuit Rule 47.5.4)[5], much less Ninth Circuit law, Corona contends that Coastkeeper member Heather Williams failed to establish Coastkeeper's standing because she declared enjoyment of a Temescal Creek reach upstream of the Facility. Opp. at 53-54 (citing *Sierra Club v. City of Jackson*, 34 Fed. Appx. 151, at *4 (5th Cir. March 19, 2002). However, Ms. Williams also declared enjoyment of a reach of

---

[5] *Cf.* Ninth Circuit Rule 36-3(a) (unpublished Ninth Circuit orders also are not precedent).

Temescal Creek around Cajalco Road, downstream of the Facility. Supp. ER000195-96; Coastkeeper RJN at 1-4, Chase Exs. 1-4 (requesting judicial notice that the portion of Temescal Creek adjacent to Cajalco Road is downstream of the Facility). In addition, she declared enjoyment of all the Temescal Creek watershed and its wildlife, including "downstream waters," such as the Santa Ana River into which Temescal Creek flows. Supp. ER000194-97. She declared concerns that sediments carried by the Facility's stormwater runoff travel downstream for miles, causing various adverse environmental impacts. Ms. Williams explained that "My enjoyment of these waters is harmed knowing that industrial pollution from Defendant's facility…is harmful to wildlife," thus underscoring both that she uses these downstream waters for wildlife appreciation and that she believes this enjoyment is being impaired by Corona's discharge. Supp. ER000198.

Corona contends that Ms. Williams' expressions of "[o]ngoing 'concerns' about the environment are not enough," that a "'plaintiff's subjective apprehensions'" are irrelevant for standing demonstrations which can only be made with demonstrations of "the reality of the threat of repeated injury [to the environment]." Opp. at 54-55, *quoting*

21

*Laidlaw*, 528 U.S. at 199 (Scalia, J., dissenting). Corona fails to acknowledge that it is quoting a *dissenting* opinion. In this passage, Justice Scalia acknowledged and objected that this approach was *not* the majority's holding. Instead, *Laidlaw* held that a subjective, reasonable fear of impairment of one's enjoyment of the environment suffices for standing. Ms. Williams' fears of Temescal Creek impairment are reasonable given Coastkeeper's expert's testimony concerning risk of harm to the Creek. *See* ER00765-71. Corona's further contention that Ms. Williams' expressed concerns that Corona's discharges are harming Temescal Creek is improper expert testimony are meritless. Her declaration is not offered to establish that, as a matter of expert opinion, environmental harm has actually happened, which under *Laidlaw* Coastkeeper need not prove, but to establish that Ms. Williams has been harmed because she reasonably believes that her enjoyment of the Creek has been and/or will be diminished by Corona's conduct.

Corona again contests that Coastkeeper member Lee Reeder's declaration establishes Coastkeeper's standing because Mr. Reeder declared use of an upstream reach of Temescal Creek. Opp. at 55-56. Again, however, Corona ignores that Mr. Reeder declared he uses

"Temescal Creek" generally for various recreational purposes, not just an upstream reach of Temescal Creek. Supp. ER000211. Moreover, Mr. Reeder specifically declared he uses the area of Temescal Creek "near Corona Clay and its receiving waters," including for nature photography. *Id.* He added that he uses the area of Temescal Creek between Lake Elsinore and the City of Corona for photography, including the "south Corona" area, which is the southern portion of the City of Corona, which is downstream of the Facility. *Id.*; Coastkeeper RJN at 1-4, Chase Decl. Exs. 1-4 (requesting judicial notice that the City of Corona is downstream of the Facility). Mr. Reeder further made plain his reasonable belief that stormwater discharges from the Facility risk harming portions of Temescal Creek that he uses. Under the heading "Defendant's Acts and Omissions Harm My Use and Enjoyment of Temescal Creek," Mr. Reeder declared that sediment running from the Facility into Temescal Creek negatively impacts his enjoyment of "these waters," *i.e.*, Temescal Creek. Under *Laidlaw*, this reasonable belief suffices for standing.

Finally, Corona erroneously contends that Megan Brousseau's declaration fails to establish Coastkeeper's standing because it fails to

establish interest in or harm caused to any portion of Temescal Creek potentially affected by the Facility's discharges. Opp. at 57-59. One, Ms. Brousseau declared that she has curtailed some of her Temescal Creek use due to concern from pollution caused, in part, by the Facility, such as bringing children to Temescal Creek for watershed education programs. Supp. ER000204-05. Curtailed use of a waterbody due to pollution concerns suffices to demonstrate standing. *E.g.*, *Laidlaw*, 528 U.S. at 184. Two, she declared that concerns that the polluted creek will lower home values has caused her to hold off purchasing a home in the Temescal Creek area. Supp. ER000204-05. Again, under *Laidlaw*, this avoidance suffices for showing standing. Three, she explained that Temescal Creek flows into the Santa Ana River, the waterbody after which she named her son. She expressed concern that pollutants from Temescal Creek flow into and harm the Santa Ana River. Supp. ER000205.

Corona's argument fails that the Reeder and Brousseau declarations are insufficiently specific about precisely where in Temescal Creek the witnesses' use and feared pollutant injuries occur. Opp. at 56, 59. Corona is wrong that *Lujan v. Nat'l Wildlife Fed'n*, 497

U.S. 871 (1990), requires the pinpointing that Corona argues is required. *See, e.g.*, *S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 746 (N.D. Cal. 2011) (*Laidlaw* "has found sufficient injury where the plaintiff's declarations were not as precise as Defendant would like to require."). *Nat'l Wildlife Fed'n* held that a witness declaring general use of approximately two million acres of land, when only 4500 acres within that territory were the subject of the lawsuit, was insufficiently specific to establish statutory standing. *Nat'l Wildlife Fed'n,* 497 U.S. at 886-89. In this case, by contrast, Coastkeeper's witnesses specifically identified use of a single waterbody, Temescal Creek, and indicated they use the Creek "near" where the Facility is located and downstream of that--and fear degradation of these waters. This easily suffices for standing. *See Laidlaw*, 528 U.S. at 183 (finding standing for witnesses who used a waterway between three and 40 miles downstream of defendant); *Pacific Lumber*, 230 F.3d at 1150-51 (finding standing based on declarations of concerns over harm to identified single creek "the specific place at issue in this case"); *Cedar Point Oil*, 73 F.3d at 558 n.24 ("a strict application of the *Powell Duffryn* test does not demand" that a witness use the part of the

waterway located near defendant's discharge point because, at least when the waterway is not immense, "the plaintiff need only show an interest in the 'waterway' into which the defendant is discharging a pollutant"); *Nat. Res. Def. Council v. Watkins*, 954 F.2d 974, 979 (4th Cir. 1992) (given plaintiff's identified interest in a particular river, "unlike *Lujan*, the court is not required to assume any particularized geographical usage by the affiants to establish the injury necessary to confer standing."); *United States v. Metro. St. Louis Sewer Dist. (MSD)*, 883 F.2d 54, 56 (8th Cir. 1989) (members' occasional recreational use of specific identified waters coupled with allegations of adverse effects from pollution of these waters sufficed for standing); *Friends of Earth v. Conrail*, 768 F.2d 57, 61 (2d Cir. 1985) (use of specific river and concern about pollution suffice for standing). Coastkeeper's standing witnesses have also testified to concerns that Corona's discharges are harming another downstream river they use, the Santa Ana River. This also suffices for standing. *See S.F. Baykeeper v. W. Bay Sanitary Dist.*, No. 09-5676, 2011 U.S. Dist. LEXIS 54883, at **54-67, (N.D. Cal. May 23, 2011) (finding standing for claims concerning discharges to creeks that flow to bay when members used

portions of bay located within 15 miles from such creeks); *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 65 F. Supp. 2d 1129, 1138-42 (E.D. Wash. 1999) (discharge into irrigation canal upstream that is a tributary to a river used by plaintiffs provides nexus establishing standing).

### 5. Corona Is Wrong That the District Court Only Found Standing for Coastkeeper to Pursue Claims One and Five.

Corona erroneously contends that the District Court's summary judgment only granted Coastkeeper standing on its Claims One and Five, necessitating that Coastkeeper prove standing on its remaining claims at trial. Opp. at 23-24. Corona erroneously contends that Coastkeeper lost standing on its remaining claims by not puting on standing evidence at trial. *Id.* The District Court's summary judgment order unambiguously grants Coastkeeper standing for the case, not for a subset of its claims. ER00077; *see, e.g., Nyk Line (n. Am.) v. Burlington N. & Santa Fe Ry. Co.*, 222 F. Supp. 2d 1176, 1178 (C.D. Cal. 2002) (court may grant summary judgment on any part of a claim, *i.e.*, any issue). Moreover, Judge Carter subsequently unambiguously decreed in pretrial conferences with counsel that standing was *not* to be

an issue at trial and the parties should not put on evidence directed to it. ER01217-18, 01223-1224, 01231. Having received an order establishing its standing for all claims and having been instructed by the court not to put on additional standing evidence at trial, Coastkeeper properly did not do so.

## B. The District Court Erred in Failing to Instruct the Jury That the Clean Water Act Authorizes Citizen Suits Based on Violation of Any NPDES Permit Condition.

As discussed in Coastkeeper's Opening Brief (at 42-55), the District Court erroneously instructed the jury that Coastkeeper had to prove discharges "into" Temescal Creek to prevail on its non-discharge claims for violation of the IGP's procedural requirements. This jury instruction error was prejudicial as it led to a jury defense verdict on Coastkeeper's Claims Six and Seven alleging Corona's failure to monitor and report its stormwater discharges. *Id.*

## 1. The Court Should Give Deference to the State Board's Interpretation of the Clean Water Act.

The State Board *Amicus*, which Corona largely ignores, underscores that the District Court's jury instructions and the resulting jury verdict were wrong:

> …the district court erred in ruling that a citizen plaintiff cannot enforce a violation of a non-discharge requirement (such as monitoring or reporting) of an NPDES permit unless the plaintiff also proves that the defendant discharged pollutants to a jurisdictional water. The ruling is not tethered to the text of the Clean Water Act, is not supported by case law interpreting requirements specific to citizen suit actions, and is inconsistent with the permit itself. If left to stand, the ruling could severely constrain enforcement activities as they apply to regulated storm water discharges associated with industrial activities.

Board *Amicus* at 2-3 (footnote omitted). The State Board has authority to implement the CWA in California and, as its *Amicus* points out, the State Board issued the NPDES permit at issue in this proceeding, the IGP. Board *Amicus* at 2, 6-8; *Nat. Res. Def. Council v. City of L.A.*, 725 F.3d 1194, 1198-99 (9th Cir. 2013). Accordingly, even if the CWA, 33 U.S.C. § 1365(f)'s plain language were not determinative, the State Board's interpretation of the section and the IGP should guide the Court to reject Corona's arguments concerning the CWA's citizen suit limitations. When statutes are ambiguous, courts defer to permissible

statutory constructions from implementing agencies. *See, e.g., INS* v. *Aguirre-Aguirre,* 526 U.S. 415, 424 (1999); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 843 (1984); *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952–53 (9th Cir. 2009) (*citing Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). This deference respects such agencies' greater technical and policy expertise. *See Chevron,* 467 U.S. at 866; *Rust* v. *Sullivan,* 500 U.S. 173, 187 (1991). Agency interpretations of statutes and permits in legal briefs, including *amicus* briefs, are entitled to deference if they are not "*post hoc* rationalization…to defend past agency action against attack," but instead appear to "reflect the agency's fair and considered judgment on the matter in question." *Auer v. Robbins*, 519 U.S. 452, 462, (1997); *see also Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208 (2011) (deferring to agency *Amicus* brief interpretation).

The State Board's *Amicus* is obviously not *post hoc* rationalization against an attack. The State Board is not a party and its actions are not under challenge. Instead, the State Board's *Amicus* provides the agency's fair and considered judgment on issues of CWA interpretation

30

that are of significant public interest. Accordingly, the State Board

*Amicus* is owed "a measure of deference proportional to the

thoroughness evident in its consideration, the validity of its reasoning,

its consistency with earlier and later pronouncements, and all those

factors which give it power to persuade." *Christopher v. SmithKline*

*Beecham Corp.*, 567 U.S. 142, 159 (2012). The Board *Amicus* is

thorough, well grounded in authoritative reasoning, and demonstrably

consistent with State Board long-standing approaches to stormwater

pollution prevention and thus entitled to the highest level of deference.

Notably, the Board *Amicus* elucidates the State Board's reasoning

and goals in issuing the IGP and the IGP's "non-discharge

requirements" that, in keeping with Ninth Circuit case law, the Board

labels as "'a range of prophylactic, procedural rules designed to reduce

the risk of pollution.'" Board *Amicus* at 8 (quoting *Pacific Lumber*). The

Board identifies these non-discharge requirements as including the IGP

terms that Corona has violated: (1) development of a site-specific

SWPPP, (2) development of BMPs that constitute BAT/BCT, (3)

implementation of an adequate stormwater monitoring program, (4)

filing Exceedance Response Action ("ERA") reports if stormwater

pollutant levels exceed Numeric Action Levels ("NALs"), and (5) submittal of annual reports detailing site monitoring. Board *Amicus* at 8-12. Corona does not contest the Board's assertions concerning the centrality of these non-discharge requirements to achieving the IGP's water protection purposes.

The State Board further points out that the IGP expressly makes noncompliance with any IGP provision an enforceable CWA violation, citing for support a U.S. Environmental Protection Agency ("EPA") regulation, 40 C.F.R. § 122.41(a), and the CWA statute. *Id.* at 12-13, 28-29. The State Board correctly points out that the plain meaning of its own permit should be respected. Board *Amicus* at 29 (citing *Alaska Cmty. Action on Toxics v. Aurora Energy Servs., LLC*, 765 F.3d 1169, 1172 (9th Cir. 2014)). The Board further notes that "citizen suits are an important adjunct to its enforcement actions, and they address violations that the Water Boards do not have the resources to pursue with their own staff." *Id.* at 14. The Board further presents detailed analysis why, in accordance with Ninth Circuit precedent, it interprets 33 U.S.C. § 1365(a)(1) to authorize citizen suits for violations of purely procedural NPDES permit conditions, even without proving pollutant

discharges to waters. *Id.* at 17-22. The Board also explains why it views *Gwaltney of Smithfield Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987), as *not* mandating that citizens prove a post-complaint pollutant discharge to earn jurisdiction to bring suit for violations of non-discharge permit conditions. The Board opines that *Gwaltney* mandates only that citizens prove that the violations they seek to prosecute are continuing or will likely continue after they file suit--thus meaning that for non-discharge violation claims, citizens must only show that *the non-discharge violations* are likely to continue post-suit. *Id.* at 23-25.

### 2. Corona's Contentions Concerning Statutory Limits on Citizen Suit Enforcement Lack Merit.

Coastkeeper's Opening Brief (at 44-50) and, as discussed above, the State Board's *Amicus* detail why CWA citizen suits are authorized for violations of purely procedural NPDES permit requirements, even absent proof of pollutant discharge to waters violations. The plain meaning of 33 U.S.C. § 1365(a)(1) dictates this outcome. *See, e.g.*, *Chevron*, 467 U.S. at 842-43 (courts must give effect to the plain meaning of a statute). And this Court has plainly stated that citizens

33

have the right to enforce *any* NPDES permit term, "even those which are purely procedural." *Pacific Lumber*, 230 F.3d at 1151.

Ignoring the State Board *Amicus* and relegated to contesting *Pacific Lumber'*s unequivocal pronouncement that citizens can enforce even "purely procedural" NPDES permit conditions as "*dicta*," Corona persists in erroneously arguing that the CWA only authorizes citizens to bring suit for violations of NPDES permit procedural conditions when they can also prove discharges to waters. Opp. at 29-34. Corona's tortured reading (Opp. at 31) of the out-of-circuit decision *Askins v. Ohio Dept. of Agriculture*, 809 F.3d 868, 875 (6th Cir. 2016) is unavailing. The case is neither binding nor support for limiting citizens to suing for NPDES permit violations only if they can prove that defendants have discharged pollutants. Instead, *Askins* held only that citizens cannot under 33 U.S.C. § 1365 sue a "*regulator*," *i.e.*, a state agency administering the CWA, for not following procedural requirements in the agency's administration of the CWA, as opposed to a "*polluter*" that has violated the CWA.

Corona is also wrong that *Gwaltney* and *Sierra Club v. Union Oil Co.*, 853 F.2d 667 (9th Cir. 1988), the Ninth Circuit decision

interpreting *Gwaltney*, mandate that citizens prove post-complaint CWA violations or the reasonable likelihood of repeat future violations to have jurisdiction to bring claims. Opp. at 36-37. As discussed in Coastkeeper's Opening Brief, *Gwaltney* unequivocally holds that to invoke jurisdiction, citizens must only make good faith *allegations* that CWA effluent limitation violations are ongoing or are likely in the future to recur at the time they file suit. 484 U.S. at 64.

Finally, Corona fancifully contends that the CWA does not authorize citizen enforcement of NPDES permit procedural requirements because 33 U.S.C. § 1365(f) does not list 33 U.S.C. § 1318 as one of the provisions that citizens can enforce violations of and section 1318 authorizes the EPA Administrator to impose monitoring and reporting obligations. This is wrong for numerous reasons. (1), 33 U.S.C. § 1365(a)(1) and (f) unambiguously authorize citizen enforcement of "any effluent limitation" and further define an effluent limitation to include *any* condition of an NPDES permit. Citizens such as Coastkeeper are not enforcing 33 U.S.C. § 1318, but NPDES permit conditions. (2), the NPDES permit in issue, the IGP, was issued by California's State Board, under authority granted it by the EPA

pursuant to 33 U.S.C. § 1342. For EPA to approve a state to issue

NPDES permits, the state must have authority: "[t]o issue permits

which apply, and ensure compliance with, all applicable requirements

*of section 1318 of this title….*" 33 U.S.C. § 1342(b)(2)(A) (emphasis

added). Thus, the monitoring and reporting requirements in the IGP

are issued in accordance with 33 U.S.C. § 1318's requirements, and

when incorporated into an NPDES permit, plainly enforceable by

citizens. (3), Corona's contention contradicts numerous cases discussed

in Coastkeeper's Opening Brief (at 48-49) allowing citizens to enforce

reporting and monitoring requirements of NPDES permits. Conversely,

Corona cites no authority holding that section 1318's omission of a

cross-reference to section 1365(f) has significance. (4), Corona does not

and cannot argue that the IGP's requirements to implement BMPs that

constitute BAT/BCT and to implement a SWPPP are monitoring and

reporting requirements within the meaning of 33 U.S.C. § 1318--neither

involve monitoring or reporting. Hence its argument, even if it

otherwise had merit, would be no basis for reversing summary

judgment for Coastkeeper on Claims One and Five.

### 3. The District Court Erroneously Failed to Instruct the Jury Concerning Corona's Discharges into Temescal Creek.

The District Court also committed prejudicial, reversible error by failing to instruct the jury that Corona's Requests for Admission response admitting that stormwater from the Facility "indirectly flows to Temescal wash" conclusively established this fact. ER00698-99. Corona's admission was written in the present tense and signed in April 2019--well after Coastkeeper filed suit. ER.00093-94. Accordingly, Coastkeeper contended during the District Court's conference on the jury instructions that Corona's Request for Admission response constituted a "judicial admission" that established discharge to Temescal Creek as a matter of law. ER00697-99, 00185. The District Court declined to instruct the jury that this fact had been established, erroneously treating the Request for Admission response as "evidence" that should have been but was not introduced as part of Coastkeeper's case in chief. ER.00010. On appeal, Corona echoes that the Request for Admission response is "evidence," and the District Court's not presenting it to the jury was within its discretion not to reopen a trial

for new evidence. Opp. at 42-43. This is plain error; request for admission responses under Federal Rule of Civil Procedure 36(a) are not evidence, but instead conclusively establish matters admitted. *E.g.*, *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007).

Additionally, as pointed out in Coastkeeper's Opening Brief (at 37-38), the District Court erred in instructing the jury that Coastkeeper had to prove that Corona had "discharged pollutants from a point source *into* streams or waters that quality as jurisdictional 'waters of the United States.'" (emphasis added). ER00192-94, 00198. This instruction erroneously failed to explain what it means to discharge pollutants "into" streams or waters. The jury easily could have construed this as instructing that CWA jurisdiction only exists when a pipe empties *directly* into a stream or water body--and CWA jurisdiction does not exist if wastewater flows from the end of a pipe over land a short distance before flowing into a stream. However, *Cty. of Maui*, 140 S. Ct. 1462, makes it plain that this is erroneous. The jury should have been instructed if Corona's stormwater runoff flows from a pipe a short distance over upland and then into Temescal Creek, it is regulated under the CWA.

These District Court jury instruction errors were plainly prejudicial to the extent that Coastkeeper need to prove that Corona discharges stormwater to Temescal Creek. Without these errors, the jury may well have found that Corona discharges stormwater to the Creek.

### 4. Coastkeeper Was Prejudiced By the District Court's Departure from Its Law of the Case Summary Judgment Ruling.

As pointed out in Coastkeeper's Opening Brief (at 60-62), the District Court's jury instructions failed to adhere to its law of the case summary judgment ruling that Coastkeeper need not prove discharges to Temescal Creek to win summary judgment on non-discharge allegations. This late law of the case departure prejudiced Coastkeeper and warrants reversing judgment for Corona on Claims Six and Seven.

Corona baselessly contends that the law of the case doctrine *per se* does not apply to District Court decisions and District Courts are necessarily free to reconsider their decisions without restraint. Opp. at 44. Corona misconstrues *City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001), which cannot and does

not contradict Supreme Court and Ninth Circuit precedent that while district courts retain authority to reconsider their interlocutory orders, the doctrine applies to all courts at all stages. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, (1988) ("the doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions"); *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (While "[t]he doctrine is not a limitation on a tribunal's power," it remains "a guide to discretion" even to district courts in reviewing their own decisions.); *Newdow v. Lefevre*, 598 F.3d 638, 644 (9th Cir. 2010) (a three-judge Ninth Circuit panel cannot overrule a circuit precedent, only an *en banc* may do so). Moreover, failure to follow the law of the case constitutes an abuse of discretion unless "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *Alexander*, 106 F.3d at 876.

None of these five circumstances were present here, making the District Court's failure to adhere to the law of the case reversible error. However, as discussed in Coastkeeper's Opening Brief (at 60-62), even if

any of these circumstances applied, the District Court still erred in not

providing Coastkeeper notice of its changed decision before Coastkeeper

had rested at trial, thus depriving Coastkeeper of opportunity to

present evidence to prove its case under the District Court's new rule.

*E.g., In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432

(3d Cir. 2009); Wright & Miller, 18B Federal Practice and Procedure §

4478.1 (2d ed. 1987) ("The primary constraint [on trial court

reconsideration of rulings under the law of the case doctrine] arises

from the need to protect reliance against the unfair surprise that might

result from changing direction without adequate opportunity to

respond,"[6] *citing Berardelli v. Allied Services Institute of Rehabilitation

Medicine*, 900 F.3d 104, 125 n.17 (3d Cir. 2018)).


**C. The District Court Did Not Award Summary Judgment on
"Wholly Past" CWA Violations.**

Corona contends that the District Court awarded summary

judgment on Coastkeeper's Claim One that Corona had failed to

---

[6] Note: Coastkeeper's Opening Brief (at 61-62) erroneously attributed this quote to *Dietz v. Bouldin*, 136 S. Ct. 1885 (2016). As noted here, the quote is actually from Wright & Miller.

implement appropriate BMPs without evidence that Corona failed to implement such BMPs post-complaint. Opp. at 59-62. Corona contends that *Gwaltney*'s bar on citizen CWA claims for "wholly past" violations thus requires reversing the District Court's summary judgment on Claim One. Opp. at 59-60. Corona is wrong, however, as the District Court judgment was firmly grounded in evidence of Corona's ongoing, post-complaint failure to have adequate BMPs.

Corona falsely contends that the District Court premised its summary judgment on Regional Board Notices of Violation ("NOVs"), issued in 2015, 2016, and 2017, that predated Coastkeeper's February 2018 Complaint. Opp. at 60. Corona ignores that the District Court *did not rely exclusively* on these NOVs and instead also recited that the Facility's post-complaint stormwater runoff samples showed elevated pollutant levels above NALs. ER00078-80. The District Court further recited evidence of failure to install specific BMPs recommended for the Facility. ER00080.

The District Court's summary judgment on Claim One establishing post-complaint BMP violations is well-supported. To begin, the NOVs repeatedly warned Corona that its BMPs were either

42

missing, ineffective, or inadequate. ER01714-15, 01718-20, 01724-25, 01728-29. Corona sidesteps that in his post-complaint, May 2019 deposition, Regional Board staffer Michael Roth testified that the Facility had more work to do before it would have adequate housekeeping measures constituting the required BMPs. ER00226-27. ("in the past they [Corona] have had them [housekeeping problems], and they might have some more. They have to do some more work.").

If Corona had instituted new BMPs to address the deficiencies documented in the NOVs before Coastkeeper filed suit in February 2018, it was required to identify them in a revised, updated SWPPP. However, Corona did not adopt a new SWPPP between the time the Regional Board issued its NOVs until June 30, 2019. ER00590-91, Plts. Supp. ER00188. Indeed, Corona's Vice President testified at deposition that he had never spoken with Corona's stormwater consulting engineer about adopting new controls in response to stormwater sample results showing elevated levels of pollutants. ER00244. Similarly, given that the pollutant levels in Corona's stormwater runoff exceeded NALs, the IGP required Corona to file with the State Board ERA Reports outlining what additional BMPs or other steps it would take to reduce pollutants

in its stormwater discharges. ER01519-23. However, Corona never submitted ERA Reports to the State Board. ER01768-69. If Corona had indeed implemented additional BMP measures, they should have been in ERA Reports.

Additionally, in his post-complaint, October 2018 inspection, Coastkeeper's expert observed and subsequently opined in detail on Corona's on-going failure to implement BMPs that meet the IGP's BAT/BCT standard. Plts. Supp. ER00265-67.

Furthermore, Corona's own expert testified that Corona had failed, post-complaint, to implement several BMP measures that he or another Corona consultant had recommended for the Facility. ER00632-33, 00647-48. He further testified that Corona had only implemented several recommended BMPs in 2019. ER00628. He also indirectly acknowledged that existing, post-complaint BMPs were inadequate at the Facility as he opined that the construction of an off-site infiltration basin, which did not exist yet, would bring the Facility into IGP compliance. Supp. ER000154, ER00625-26. Corona's expert added that another Corona consultant was "presently engaged in developing, interim, on-site measures" pending construction of the off-site

infiltration basin and other BMP measures that did not yet exist. ER00626-27. Notably, this expert did not opine that existing measures at the Facility constituted adequate BMPs, again, instead effectively acknowledging that more BMPs were needed to bring the Facility into IGP compliance. ER00627-28.

Moreover, the evidence established that stormwater flowed off the Facility during several storm events after Coastkeeper filed suit in February 2018. ER00472-534. Corona sampled this stormwater runoff at its "Area 1" sampling location, which Corona acknowledged in its State Board reports and in its SWPPP is downstream of the Facility and meant to be representative of stormwater runoff leaving the site. ER00472-534. Pollutant levels in these samples repeatedly exceeded NALs. ER00472-534, 01518. These sample results demonstrated that Corona had not implemented effective new BMPs constituting BAT/BCT before Coastkeeper filed suit as the level of pollutants in its stormwater discharges post-February 2018 remained consistent with the levels of pollutants in its stormwater *before* February 2018. Notably, while stormwater discharges having pollutant levels exceeding NALs, without more, does not conclusively establish the matter, this is

evidence that a facility lacks BMPs that constitute BAT/BCT;[7] in combination with other evidence this can conclusively establish failure to have adequate BMPs. *Coastal Envtl. Rights Found. v. Am. Recycling Int'l, Inc.*, No. 17-00425, 2017 U.S. Dist. LEXIS 202649, at **26-28 (S.D. Cal. Dec. 8, 2017); *Cal. Sportfishing Prot. All. v. River City Waste Recyclers, Ltd. Liab. Co.*, 205 F. Supp. 3d 1128, 1150 (E.D. Cal. 2016); *see also Santa Monica Baykeeper v. Int'l Metals Ekco, Ltd.*, 619 F. Supp. 2d 936, 945-47 (C.D. Cal. 2009) (noting that stormwater sample results in excess of EPA Benchmark Values (which NALs are patterned after), is evidence that defendant lacked BMPs that achieve BAT/BCT); *Santa Monica Baykeeper v. Kramer Metals, Inc.*, 619 F. Supp. 2d 914, 924-25 (C.D. Cal. 2009) (same). Here, evidence establishing Corona's post-complaint stormwater discharges violated NALs was accompanied by substantial other evidence, discussed above, that the Facility lacked adequate BMPs: (1), Regional Board NOV findings that Corona lacked compliant BMPs, (2), evidence that the pollutant levels in Corona's

---

[7] The IGP recognizes that discharging stormwater with pollutant levels exceeding the NALs necessarily means that additional investigation into pollutant loading and steps, including potential BMPs, to reduce this loading are required--at least implying that existing BMPs alone should be seen as inadequate. ER01521-26.

post-complaint stormwater discharges remained as elevated as its pre-complaint discharges--indicating that post-complaint site conditions were functionally similar to the pre-complaint conditions that the Regional Board had repeatedly documented failed to comply with the IGP's BAT/BCT standard, (3), Regional Board testimony that the Facility continues to have housekeeping problems post-complaint, (4), no SWPPP documentation that Corona had instituted new BMPs pre-complaint, (5), Coastkeeper's expert's opinion that the Facility still lacked adequate BMPs post-complaint, and (6), Corona's own expert's acknowledgment that Corona had failed to implement recommended BMPs and needed additional BMPs to bring the Facility into compliance. In evaluating whether to uphold the District Court's summary judgment, this Court should take the record as a whole (and not necessarily just the evidence called out by the District Court). *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 956 (9th Cir. 2009) (the court of appeals "may affirm summary judgment on any ground supported by the record.").

The above evidence provided a *prima facie* showing of Corona's liability, thus shifting the burden to Corona to present countervailing,

admitted evidence that would create a genuine issue of material fact and warrant reversal of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Corona's sole rebuttal evidence is that it constructed retention basins at the Facility, which it contends should have been seen as effective BMPs bringing Corona into IGP compliance. Opp. at 60-62. Corona distorts the evidence, however. Corona contends it constructed a "large" Facility silt basin "sometime before June 2017" (*id.* at 60), but this is misleading. Whatever silt basin Corona had before June 2017 was plainly inadequate both as documented by the Regional Board's NOVs' conclusions that the Facility lacked adequate BMPs and by Corona's own conduct in commencing (not completing) expansion of the silt basin in June 2017. Supp. ER000147. Corona's expert testified that Corona expanded the basin in 2017, 2018, and again in 2019. ER00574. That Corona continued extensive expansions of the silt basin in 2018 and 2019 after Coastkeeper filed suit in February 2018 underscores that Corona lacked IGP compliant BMPs when Coastkeeper filed suit. After all, Corona's apparent contention that the

silt basin as it now exists post-2019 expansion complies with the IGP's BMP requirements means Corona was necessarily not in compliance in February 2018. This is supported by Corona's expert's trial testimony acknowledging that the basin was not then large enough to capture all stormwater runoff from the Facility and that Corona *never* has had infrastructure that would allow it to absorb and retain all its stormwater on-site. ER00619. Moreover, Coastkeeper and Corona's experts confirmed that the site needs to be graded so that the basins actually intercept all stormwater runoff from the Facility's industrial areas, which had not been accomplished even through trial. Plts. Supp. ER00265-66, ER01252. Instead, at least some stormwater runoff from the Facility would bypass the basin and flow off-site. Plts. Supp. ER00265-66, ER01252, ER00604-05,00612.

Corona contends that "[i]n late 2017 or early 2018," Regional Board staffer Michael Roth observed that during a rain event the silt basin was preventing stormwater runoff from leaving the Facility. Opp. at 6, 60-61. Corona's assertions concerning Mr. Roth's observation do not support its positions, however. One, Corona's assertion that Mr. Roth's silt basin observation in question was in late 2017 or early 2018

and thus potentially pre-complaint is simply false. Mr. Roth's site inspection in question was in the winter of 2018-19, *after* the complaint. ER00861-62. Two, Corona mischaracterizes Mr. Roth's testimony. While he indicated he was "pretty sure there was no discharge" from the silt basin during his 2018-19 inspection, he added that he was "surmising a little bit," mentioned a stormwater discharge pathway down a driveway, and was about to further clarify his testimony when Corona's counsel cut him off with another question. Supp. ER000186. His testimony did not, as Corona contends, "make clear" that the "silt basin prevented discharge entirely" during Mr. Roth's site visit. Opp. at 60. Three, even if Mr. Roth observed that the silt basin was constraining stormwater discharge during a single storm event in 2018-19, this evidence is meaningless in terms of evaluating whether the silt basin constituted a BMP that achieved BAT/BCT standards when Coastkeeper filed suit or even during Mr. Roth's inspection. Under the IGP, only retention of the 85th percentile 24-hour storm event is presumptively considered to be BAT/BCT. ER00245. Corona offered no evidence concerning how large the storm event was during Mr. Roth's site visit or how large of a storm the silt basin would have retained

then, much less at the time Coastkeeper filed its complaint. Without such evidence, retention of a given storm event of undefined size has no probative value.

In sum, Corona fails to present evidence demonstrating a material fact dispute warranting reversing the District Court's well-supported summary judgment.

D. **The District Court Properly Denied Corona's Rule 60 Motion.**

The District Court properly denied Corona's Federal Rule of Civil Procedure 60(b)(4) and 59(e) Motion (Supp. ER00005-35) ("Rule 60 Motion") as this motion merely presented the same arguments discussed above concerning standing and *Gwaltney.* ER00001-2. For the reasons stated above, these arguments lack merit, meaning Corona's Rule 60 Motion similarly lacked merit.

Corona filed its Rule 60 Motion after Coastkeeper filed its April 21, 2020 Notice of Appeal (ER00146-52), at which point the District Court had been divested of jurisdiction for most purposes. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). While Federal Rule of Appellate Procedure 4 allowed the court to nonetheless hear Corona's Rule 60 Motion, the District Court was not obligated to

make detailed findings on the motion; it permissibly could, as it did, summarily deny it. *See Atkinson v. Prudential Property Co.,* 43 F.3d 367, 374 (8th Cir. 1994), *cert. denied,* 493 U.S. 977, (1989); *United States v. 8136 S. Dobson St.,* 125 F.3d 1076, 1086 (7th Cir. 1997); *see also Wood v. Ryan*, 759 F.3d 1117, 1119 (9th Cir. 2014) (Rule 60 rulings are reviewed "under the deferential abuse of discretion standard"). The District Court sensibly denied Corona's Rule 60 Motion summarily to serve judicial economy. ER00001. However the court ruled, this Court would take up the same issues—making the District Court's analysis of these issues an unnecessarily duplicative use of judicial resources. *Id.*

E. **The District Court's Civil Penalty Assessment Should Be Affirmed.**

   1. **Corona Waived Some or All of Its Challenge to the Penalty Assessment.**

Before trial, Coastkeeper repeatedly telegraphed that it was seeking CWA civil penalties. Coastkeeper's Complaint stated a claim for civil penalties. ER01928-29. Coastkeeper further referenced its civil

penalty demand when suggesting bifurcation of liability and penalties at trial in its Proposed Final Pretrial Conference Order. ER00032. Coastkeeper similarly discussed bifurcation of liability and penalties at the final pretrial conference underscoring Coastkeeper's ongoing pursuit of penalties. ER01203. Coastkeeper's trial brief included detailed analysis of why $3,700,000 was an appropriate civil penalty. ER01142-48. Coastkeeper's notice accompanying its proposed post-trial judgment again recommended and explained the basis for a $3,700,000 penalty. Plts. Supp. ER00173.

By contrast, though obviously notified that civil penalties were requested, Corona failed to offer any pre-trial or pre-judgment argument or evidence concerning what the proper civil penalty assessment should be if the District Court found CWA liability. Corona did not offer evidence of its putative economic benefit and hardship (*see* Opp. at 73, 75) until its post-judgment Rule 60 Motion. Supp. ER000029-34. Corona's failure to present any pre-trial or pre-judgment argument or evidence concerning the proper civil penalty assessment waived Corona's ability to argue this point before the District Court or

on appeal. *See Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 874 F.3d 1083, 1099 n.9 (9th Cir. 2017); *Kona,* 229 F.3d at 890-91.

### 2. The District Court's Civil Penalty Assessment Is Appropriate under 33 U.S.C. § 1319(d)'s Factors.

Corona's argument against the District Court's civil penalty assessment (Opp. at 67-76) ignores the court's broad discretion in calculating CWA civil penalties. *Tull v. United States*, 481 U.S. 412, 426-27 (1987) ("highly discretionary calculations that take into account multiple factors are necessary in order to set civil penalties under the Clean Water Act"); *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 1001-02 (9th Cir. 2000); *see also Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 451 F.3d 77, 87 (2d Cir. 2006), *cert. denied, City of New York v. Catskill Mts. Chapter of Trout Unlimited, Ltd.*, 549 U.S. 1252 (2007); *United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 526 (4th Cir. 1999), *cert. denied*, 531 U.S. 813 (2000); *cf. McDonough v. Aetna Life Ins. Co.*, 783 F.3d 374, 383 (1st Cir. 2015) ("Given the district court's superior coign of vantage, its hands-on judgment as to the need for a penalty and the quantification of that penalty (if one is needed) is entitled to considerable respect.").

Corona further ignores that review of the District Court's civil penalty assessment is limited to whether it constituted an abuse of discretion. *Borden Ranch P'ship v. United States Army Corps of Eng'rs*, 261 F.3d 810, 818-19 (9th Cir. 2001); *Sw. Marine*, 236 F.3d at 1001; *see also, e.g., Catskill*, 451 F.3d at 87. The District Court did not abuse its discretion in assessing civil penalties.

Notably, the District Court was obligated to impose a civil penalty once it found CWA liability. *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1397 (9th Cir. 1995). Corona contends that the District Court's penalty assessment should nonetheless be set aside because the court did not consider 33 U.S.C. § 1319(d)'s penalty assessment factors. Opp. at 72. Corona ignores, however, that the amount assessed by the District Court matched that recommended by Coastkeeper in briefs to the court that included detailed analysis of how the amount requested was appropriate under these statutory penalty assessment factors. ER01142-48. The District Court was obviously persuaded by this analysis and implicitly adopted it in assessing the exact civil penalty amount urged by Coastkeeper.

Corona's further contention that this Court should assume the District Court's civil penalty assessment task and impose a much reduced civil penalty lacks merit. Opp. at 72-76. Corona cites to no Court of Appeals decisions undertaking such a task, and this contention conflicts with Supreme Court and Courts of Appeals authority that CWA civil penalty assessment is a discretionary task *for the district courts*. Additionally, Corona's argument for drastic reduction in its civil penalty has various flaws.

Corona fancifully contends that the District Court erred in not adopting a "bottom-up" penalty assessment approach of first calculating Corona's economic benefit of noncompliance and then using the remaining section 1319(d) factors to adjust the sum up or down (which Corona urges supports a figure significantly lower than the District Court's). Opp. at 73-75. District courts plainly have discretion whether to employ a "bottom-up" or a "top-down" approach, the latter involving starting penalty assessment at the statutory maximum and then only adjusting it as warranted by the section 1319(d) factors. *United States v. Mun. Auth. of Union Township*, 150 F.3d 259, 265 (3d Cir. 1998); *Catskill*, 451 F.3d at 87. Many district courts in the Ninth Circuit have

opted for the top-down approach, which generally is "a more reliable and less speculative method of calculating the penalty." *See Ctr. for Biological Diversity v. Marina Point Dev. Assocs.*, 434 F. Supp. 2d 789, 799 (C.D. Cal. 2006); *Borden Ranch P'ship v. U.S. Army Corps of Eng'rs*, No. 97–0858, 1999 WL 1797329, at *14 n.12 (E.D. Cal. Nov. 8, 1999), *rev'd in part on other grounds*, 261 F.3d 810 (9th Cir. 2001); *Haw.'s Thousand Friends v. City & Cty. of Honolulu*, 821 F. Supp. 1368, 1394-95 (D. Haw. 1993). Accordingly, the District Court had discretion to follow the top-down approach utilized by Coastkeeper in its recommended penalty calculation. ER01142-48, 00004-5.

Corona baselessly contends that its economic benefit of noncompliance is $10,705, the amount a consultant will charge to further analyze Corona's SWPPP management. Opp. at 73. One, Corona did not introduce this evidence at trial or before the judgment assessing civil penalties. Corona introduced it only with its post-judgment Rule 60 Motion. Supp. ER000021, 000036-37. If Corona's own standard for post-trial evidence is applied against it, this evidence would be excluded. *See, e.g.*, *Kona,* 229 F.3d at 890-91 & discussion in footnote 3 above. Two, the assertion that Corona's avoided compliance costs are limited to

this proposed $10,705 expenditure on a new consultant is meritless--

and contradicted by Corona's own brief. Contradicting itself, Corona

asserts it "has expended over $315,000 for consultants, attorneys,

surveyors, lab testing companies, and other vendors for the sole purpose

of addressing compliance with the Permit [IGP]." Opp. at 74 (*citing*

Supp. ER000041). Corona further touts expansion of its retention

basins, starting before 2017 and continuing thereafter as its effective

BMP measure. ER00626-27. While Coastkeeper disputes that expanded

basins is all the BMP measure Corona needs, it agrees with Corona that

this is a BMP measure. Supp. ER000125-26. Installation of these basins

was not free and continued future work to expand the Facility's

stormwater retention (described by Corona's own expert "as a much

more ambitious project than the one that [Corona] had...implemented"

previously (ER00592-93)) will also not be free. Corona's expert also

testified that Corona has incurred "cost and effort" in revising its

SWPPPs, which it paid consultants to do post-complaint. ER00657.

Corona has benefited economically in delaying these expenditures

which plainly exceed $10,705 and should be penalized sufficiently to

recoup this economic benefit. *See, e.g.*, *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 528-30 (5th Cir. 2016).

Corona cites no authority supporting its plainly wrong argument that its civil penalty should be limited to its economic benefit from noncompliance (Opp. at 76). To the contrary, CWA civil penalties generally must recover economic benefit of noncompliance to remove incentive to violate the CWA, but should also include additional penalty assessment to punish and deter future violations.[8] *Smithfield Foods*, 191 F.3d at 528-31; *Union Township*, 150 F.3d at 263-265; *United States v. Allegheny Ludlum Corp.,* 187 F. Supp. 2d 426, 436-437 (W.D. Pa. 2002), *aff'd in part and vacated in part on other grounds United States v. Allegheny Ludlum Corp.*, 366 F.3d 164 (3d Cir. 2004).

Corona's contention that its penalty should be drastically reduced because the jury verdict indicated there has been no environmental harm caused by Corona's stormwater runoff (Opp. at 74) is baseless.

---

[8] Any contention from Corona that the District Court failed to calculate its economic benefit with precision would be meritless. "[T]he precise economic benefit a polluter has gained by violating its effluent limits may be difficult to prove, so 'reasonable approximations of economic benefit will suffice.'" *Smithfield Foods*, 191 F.3d at 529 (internal citations omitted); *Citizen Lobby*, 824 F.3d at 528-29.

One, at most, the jury's response to the ambiguous Special Verdict Form could be construed as a finding that there were no post-complaint stormwater discharges from the Facility into Temescal Creek. The Special Verdict Form did not ask the jury whether Corona had pre-complaint stormwater discharges--discharges which would be properly considered in assessing the seriousness of Corona's pre-complaint conduct. The latter is actionable in this case given that the governing statute of limitations extends to five years and sixty days before the complaint's filing. *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1521-24 & n.5 (9th Cir. 1987). The record contained extensive evidence that Corona had pre-complaint, and even post-complaint, discharges to Temescal Creek that risked environmental harm. ER01714-15, 01718-20, 01724-25, 01728-29, 01734, 01740, 01746, 01752, 01758, 01761; Plts. Supp. ER00257-63. Two, for the reasons discussed in section II.A.2.a. above, the jury verdict should not be seen as a finding that Corona has not discharged stormwater to Temescal Creek.

Arguing for reduction of its civil penalty, Corona portrays itself as having diligently strived to comply with the CWA. Opp. at 74-75. While Corona has made some efforts to improve its BMPs, Corona ignores that

the Regional Board had to badger Corona in multiple NOVs issued in 2015, 2016 and 2017 to get Corona to act. ER01714-15, 01718-20, 01724-25, 01728-29. Corona further ignores that it plainly violated the CWA for many years by operating without NPDES permit authorization and only submitted to NPDES permit regulation when directed to do so by the Regional Board. ER0601-02. Evaluating Corona's true history of violation warrants increasing rather than decreasing Corona's penalty. *See, e.g.*, *United States v. Smithfield Foods, Inc.*, 972 F. Supp. 338, 349 (E.D. Va. 1997); *aff'd in part and rev'd* in part on other grounds, 191 F.3d 516 (4th Cir. 1999).

Corona argues that the District Court's $3,700,000 civil penalty should be cut because it would destroy the company's business. Opp. at 75. Claiming poverty, Corona cites income and assets figures that it did not introduce until its post-judgment Rule 60 Motion. Supp. ER000040, 43. Again, however, if Corona's own standard is applied against it, this post-judgment evidence should be excluded. *Kona,* 229 F.3d at 890-91 & discussion in footnote 3. However, in any case, Corona has plainly failed to provide a complete, reliable portrayal of its assets. Corona's accountant's statement includes the disclaimer that "we did not audit or

review the financial statement nor were we required to perform any procedures to verify the accuracy or completeness of the information provided by management." Supp. ER000046. Accordingly, the accountant declined to "provide any assurance on the financial statement." *Id.* If the Court nonetheless considers the economic information Corona provided with its Rule 60 Motion, it should also consider Coastkeeper's countervailing information provided in its opposition. Plts. Supp. ER000 ER00022-169. This latter information showed, for example, that Corona owns 21 land parcels totaling 400 acres worth more than $4 million and has other business activities besides the clay recycling facility at issue. Plts. Supp. ER00019-20, 22-169. Notably, without any admitted evidence on this point, it would be wrong to reduce Corona's penalty for economic hardship. It was Corona's burden to demonstrate that its penalty should be reduced because of its economic impact and it "would jeopardize defendant's continued operation." *E.g., Public Interest Research Group v. Powell Duffryn Terminals, Inc.,* 720 F. Supp. 1158, 1165-66 (D.N.J. 1989) (citing EPA penalty policy for support), *aff'd in part, rev'd in part on other grounds,* 913 F.2d 64 (3d Cir. 1990).

Corona is further wrong that this Court should order a nominal penalty. One, for the foregoing reasons, the civil penalty imposed is appropriate. Two, as noted, setting CWA civil penalties is the province of the District Courts. Corona cites to no case where a Court of Appeals has assessed the CWA civil penalty on its own. If the Court does not simply affirm the District Court's penalty assessment, it should remand the matter to the District Court.

### 3. The District Court's Civil Penalty Assessment Did Not Violate the Eighth Amendment.

Corona and *Amici* Chantell and Michael Sackett, *et al.* are wrong that the Eighth Amendment's Excessive Fines Clause mandates setting the District Court's civil penalty assessment aside and a nominal civil penalty assessment. Opp. at 67, 70-71; *Amici* Brief of Chantell and Michael Sackett, *et al.* ("Sackett *Amicus*") at 15 (Dkt. 45). Corona and the Sackett *Amici* ignore that, while the Excessive Fines Clause curbs governmental overreach, the Supreme Court has cautioned courts against their own overreach in failing to respect legislative judgments concerning appropriate penalties. *United States v. Bajakajian*, 524 U.S. 321, 336 (1998) ("judgments about the appropriate punishment for an

offense belong in the first instance to the legislature….'Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments.'") (internal citations omitted); *United States v. 132,245.00 in United States Currency*, 764 F.3d 1055, 1058 (9th Cir. 2014). In keeping with this deference, the Supreme Court has cautioned against "requiring strict proportionality between the amount of a punitive forfeiture and the gravity of a criminal [or civil] offense." *Bajakajian*, 524 U.S. at 336. Instead, the "amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* at 334; *United States v. Mackby*, 339 F.3d 1013, 1016 (9th Cir. 2003) (Eighth Amendment task is determining whether a punitive fine is "grossly disproportional to the gravity of a defendant's offense.").

Evaluation of whether a penalty is so excessive as to violate the Eighth Amendment is a flexible process not restricted to "any rigid set of factors." *E.g.*, *United States Currency*, 764 F.3d at 1058. Courts typically consider four factors in weighing an offense's gravity: "'(1) the nature and extent of the crime [or other illegal activity], (2) whether the violation was related to other illegal activities, (3) the other penalties

that may be imposed for the violation, and (4) the extent of the harm

caused.'" *Id.* (internal citations omitted). However, courts have

occasionally found some of these factors inapplicable when analyzing a

penalty and have stressed the ultimate task is ensuring that a penalty

is not grossly disproportional to the offense. *E.g., Pimentel v. City of

L.A.,* 974 F.3d 917, 922-23 (9th Cir. 2020). Finally, "quantitative

analysis" of the penalty amount's proportionality to the harm caused by

violations is unnecessary, only a showing that the amount "bears 'some

relationship' to the gravity of the offense." *Id.* at 924.

Affirming the District Court's civil penalty assessment is

appropriate under these principles. Key to evaluating an offense is the

"level of culpability" involved. *Mackby*, 339 F.3d at 1017. Corona only

acquiesced to CWA permit authorization for its stormwater discharges

following Regional Board badgering and continued a cavalier IGP

compliance approach as documented by three Regional Board NOVs.

ER01714-15, 01718-20, 01724-25, 01728-29. Moreover, as an admitted

stormwater discharger to waterways, Corona falls among the class of

persons targeted by the statute in issue, the CWA. This weighs in favor

of the civil penalty assessment. *Mackby*, 339 F.3d at 1017.

Corona erroneously contends that the jury found that Corona has never discharged stormwater to Temescal Creek, meaning Corona's CWA violations were harmless and the District Court's penalty disproportionate. Opp. at 74; *see also* Sackett *Amicus* at 4, 13-14. As discussed in section II.A.2.a., Corona misconstrues the jury verdict, which cannot reasonably be deemed to find that Corona has never discharged stormwater to Temescal Creek, even in years past (an assertion which contradicts multiple representations by Corona itself that its stormwater flows to Temescal Creek). Instead, the evidence supports that, at a minimum, Corona's pre-complaint stormwater discharges in violation of the IGP risked serious environmental harm. Additionally, Corona's attempts to minimize the seriousness of its SWPPP violations is belied by the State Board *Amicus* (at 3-4, 8-9)'s observations of the importance of the IGP's SWPPP provisions to the integrity of the State Board's CWA regulatory program. These factors further support the District Court's penalty assessment.

Finally, a critical factor to consider is the maximum CWA penalty prescribed by Congress. *Mackby*, 339 F.3d at 1018. When the penalty imposed is a small fraction of Congress's prescribed maximum penalty,

this weighs strongly against a finding of gross disproportionality. *Id.* The District Court determined Corona committed 2,352 CWA violations: 664 daily violations of the IGP's SWPPP requirements plus 1,688 daily violations of the IGP's requirements to maintain BMPs that constituted BAT/BCT. ER00004. Multiplying these violations times the CWA's penalty per violation equates to a $126,739,800 statutory maximum civil penalty.[9] The Judgment's $3,700,000 penalty is merely 2.92 percent of the maximum, making it not "grossly disproportional" to Corona's violations. Accordingly, the District Court's civil penalty assessment should be affirmed. *Mackby*, 339 F.3d at 1016-18 (rejecting Eighth Amendment arguments, affirming $721,454.92 judgment); *Kelly v. United States EPA*, 203 F.3d 519, 524 (7th Cir. 2000) (affirming CWA $7000 CWA civil penalty as "not grossly disproportionate" compared to $100,000 statutory maximum).

If the Court is disinclined to simply affirm the civil penalty, it should not itself determine what is an appropriate penalty consistent

---

[9] The CWA statutory maximum penalty has increased over time as follows: (1) $37,500 per day for violations occurring between December 5, 2013 and November 2, 2015 and (2) $55,800 per day for violations occurring after November 2, 2015, where penalties are assessed on or after January 13, 2020. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4.

with the Eighth Amendment. Instead, it should only remand the penalty assessment to the District Court to determine this matter in the first instance. *See United States v. Mackby*, 261 F.3d 821, 830 (9th Cir. 2001) (remanding penalty assessment to the District Court for further evaluation of Eighth Amendment concerns).

F. **The District Court's Injunction Should Be Affirmed**.

Corona's request for reversal of the District Court's injunction should be denied. Opp. at 76-78. This Court reviews the District Court's injunction for abuse of discretion. *Sw. Marine*, 236 F.3d at 999. The District Court did not abuse its discretion as the injunction was within the court's "broad latitude in fashioning equitable relief… necessary to remedy an established wrong." *Id.*

Corona erroneously contends that the jury verdict precludes Coastkeeper from demonstrating the irreparable harm needed for injunctive relief under *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Opp. at 77. As discussed in section II.A.2.a. Above, Corona misconstrues the jury's verdict, which cannot reasonably be deemed to be a finding that Corona has never discharged stormwater to Temescal Creek. Additionally, Corona ignores Coastkeeper's expert's testimony

attesting to the environmental risk posed by Corona's operations and discharges. ER00765-71; Plts. Supp. ER00235-41. Showing that an activity poses environmental risk suffices for establishing irreparable harm; Coastkeeper need not prove that actual environmental damage has occurred. *E.g.*, *Southeast Alaska Conservation Council v. Army Corps of Engineers*, 472 F.3d 1097, 1100-01 (9th Cir. 2006) ("[w]hen a project 'may significantly degrade some human environmental factor,' injunctive relief is appropriate…risk of irreparable harm to the environment" tips balance of hardships to warrant injunction) (internal citations omitted); *see also Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545, (1987) (if environmental injury is sufficiently likely, "the balance of harms will usually favor the issuance of an injunction to protect the environment."); *Save our Sonoran, Inc. v. Flowers*, 408 F. 3d 1113, 1125 (9th Cir. 2005) (same). Additionally, Corona ignores that, as the State Board *Amicus* emphasizes, its failure to have BMPs in place that constituted BAT/BCT both before and after Coastkeeper filed suit was cognizable harm. This created ongoing risk of pollutant discharge that the IGP's requirements in issue were designed to prevent. Board

69

*Amicus* at 3-4, 8-9. Similarly, its failure to have an adequate SWPPP in place further thwarted the IGP's prophylactic design. *Id.*

The District Court properly exercised its equitable authority in ordering Corona to implement structural BMPs sufficient to retain the runoff from an 85th percentile, 24-hour storm on-site and update and amend its SWPPP by specified deadlines. ER0004; *see, e.g., Sw Marine,* 236 F.3d at 999. Corona argues that a post-judgment declaration from a new expert Ms. Gabaldon that its current settlement basin has the capacity to retain all the stormwater runoff generated in an 85th percentile, 24-hour storm negates the need for the injunction. Opp. at 77. But if Corona's own standard for admissible evidence is applied against it, this post-judgment declaration should be disregarded. *Kona,* 229 F.3d at 890-91 & discussion in footnote 3 above. In any case, however, Ms. Gabaldon's one-page declaration hardly suffices to establish that Corona has a functioning BMP system for retaining all stormwater on-site. *See* Supp. ER00036-38. (1), the declaration should be deemed inadmissible expert testimony as it fails to explain her qualifications to issue the pertinent expert opinions or her methodology in arriving at them. *E.g.,* Fed. R. Evid. 702; *Daubert v. Merrell Dow*

*Pharm.*, Inc., 509 U.S. 579, 589-93, 597 (1993). (2), she does not explain whether Corona has graded stormwater flow pathways at the Facility so stormwater will all be routed to the basin. As noted, testimony from Corona's other expert, Paul Hacunda, and Coastkeeper's expert indicated that this is not the case. Plts. Supp. ER00265-66, ER01252, ER00604-05, 00612. (3), her opinions are contradicted by Mr. Hacunda, who testified that the Facility's basins are not designed to contain each drainage area for its industrial stormwater. ER00604, 00612. (4), Ms. Gabaldon testified to no field verification that the basins are actually retaining the 85th percentile, 24-hour storm.

### G. The District Court Improperly Denied Coastkeeper's Attorneys' Fees and Costs.

Corona erroneously contends (Opp. at 46-48) that the District Court properly denied attorneys' fees and costs to Coastkeeper under 33 U.S.C. § 1365(d), providing instead that the parties would bear their own fees and costs. *See* ER00005. Corona does not contest that courts must generally award attorneys' fees to even partially prevailing

environmental citizen suit plaintiffs. *E.g.*, *St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1061-64 (9th Cir. 2009). Corona further does not contest that denial of attorneys' fees to prevailing citizen plaintiffs is an abuse of discretion absent "special circumstances." *Id.*; *see also Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1092 (9th Cir. 2011). Finally, Corona effectively concedes that the District Court's Judgment rendered Coastkeeper a prevailing party, offering no argument to the contrary. Corona's only argument for denying Coastkeeper its attorneys' fees (other than reversal of the Judgment) is that "special circumstances" warrant this, even though the District Court found no such special circumstances. Corona cites several mostly out-of-circuit decisions finding circumstances that justify denial of attorney fee awards, but offers no argument that any of those circumstances exist here--and they do not. Opp. at 46-47. Corona offers a single meritless argument that Coastkeeper failed to present evidence of Corona's stormwater discharges to Temescal Creek, focusing instead on "reporting and monitoring" violations and that this constitutes a special circumstance meriting denying Coastkeeper's fees. One, Corona ignores that

Coastkeeper did offer substantial evidence of discharges to Temescal Creek as discussed in section II.A.2.b. above. Two, Coastkeeper argued and prevailed on claims that were not reporting and monitoring in nature. As discussed in section II.C. above, Coastkeeper established Corona's liability for failure to implement BMPs designed to prevent polluted stormwater from reaching Temescal Creek and failure to have an adequate SWPPP, *i.e.,* a plan for managing the Facility in a manner that would curb polluted stormwater runoff. Three, Corona cites no authority that prevailing only on monitoring and reporting CWA violations is a special circumstance under the *St. John's* standard, and the assertion is facially implausible. As underscored by the State Board *Amicus*, the IGP's monitoring and reporting requirements serve important functions under the State Board's stormwater regulatory program. Enforcing these requirements alone would be a substantial achievement warranting attorney fee recovery.

In sum, the District Court's Judgment denying Coastkeeper's attorneys' fees and costs should be reversed with instructions to award appropriate attorneys' fees and costs to Coastkeeper.

## III. CONCLUSION

For the foregoing reasons, the District Court's Judgment for Coastkeeper on Claims One and Five and accompanying award of civil penalties and injunctive relief should be affirmed. The court's Judgment dismissing Coastkeeper's Claims Six and Seven should be reversed with directions to enter judgment for Coastkeeper and to award Coastkeeper reasonable attorneys' fees and costs.

Respectfully submitted,

Christopher Sproul
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email:
csproul@enviroadvocates.com
Counsel for Appellants

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, counsel for Plaintiffs state that it knows of no cases pending in this Court that are related to this appeal within the meaning of Rule 28-2.6.

Christopher Sproul
Environmental Advocates

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*

*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

9th Cir. Case Number(s) <u>No. 20-55420</u>_____

I am the attorney or self-represented party.
This brief contains <u>13,961</u> words, excluding the items
exempted by Fed. R. App. P. 32(f). The brief's type size and
typeface comply with Fed. R. App. P. 32(a)(5) and (6).
I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ X ] is a cross-appeal brief and complies with the word limit

of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of

Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-

2(c)(3).

[ ] is for a death penalty case and complies with the word

limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties;

[ ] a party or parties are filing a single brief in response to multiple briefs; or

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature s/Christopher Sproul

Date: November 17, 2020

*(use "s/[typed name]" to sign electronically-filed documents)*

# CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2020, I electronically filed the

foregoing brief with the Clerk of the Court for the Corona States Court

of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

All parties to this case are represented by registered CM/ECF users and

service will be accomplished by the appellate CM/ECF system.

Christopher Sproul
Counsel for Appellants